ALBERT G. BRISBINE *vs.* ST. PAUL & SIOUX CITY RAILROAD
COMPANY.

July 12, 1876.

Condemnation of Land for Railway—Issue as to Title and Estate of Owner Named
in Petition,—In proceedings, under the general railway law, to condemn
land for railway purposes, the persons named in the petition as owners of
the land sought to be taken, may, before the commissioners, as well as on
appeal, dispute the statements of the petition as to their title and estate, and
show their real title and estate; and the issue thus made is proper to be
passed upon by the commissioners, in determining the question of damages,
and their decision thereon is reviewable, on appeal, in the district court.

Same—Riparian Rights of Owner of Naked Fee of Street Bordering on the
Mississippi River.—The owner of a piece of land bordering on the Mississippi
river, purchased from the United States, and comprising a block of land in
a city, and a narrow strip between such block and the river, continues to be
a riparian proprietor, though such strip has become a public street by a
common-law dedication; and, even after he has conveyed such block,
describing it in his deed as extending to the street, he continues to be a
riparian proprietor in respect of his ownership of the fee of that half of the
street between the centre thereof and the river. As such riparian proprietor
he holds the fee to low-water mark, subject to the public easement of navi-
gation, and with all the rights of other riparian owners as detailed in the
opinion; and he is entitled to compensation in respect of those rights, from
a railway company that seeks to condemn, for the purposes of its railway, the
land between the centre of the street and the centre of the channel of the
river.

Same—Peculiar Value of Land to Railway Company as Affecting Amount of Com-
pensation to Owner.—In proceedings by a railway company, having its
terminus at St. Paul, to condemn a strip of land in that city, between the
foot of the bluff and the Mississippi river, the circumstance that such strip
of land affords the only route by which the company can make a connection
with other railways terminating at that city, is proper to be considered by
the jury in their award of compensation to the land-owner.

The St. Paul & Sioux City Railroad Company, in March,
1874, presented its petition to the district court for Ramsey
county, setting forth, among other things, that it would be
necessary for it to appropriate, for the purposes of its road,
certain real estate in the city of St. Paul, described in the
petition as follows : " Commencing at a point in the centre
line of Wabasha street, north of, and nineteen feet distant

from, the centre line of the main track of said railroad as constructed; thence westwardly, and parallel to said centre line of said railroad track, to a point in the prolongation southwardly of the east line of block number 35, in the original town of St. Paul, as platted and on file in the office of the register of deeds of said county of Ramsey, which point is nineteen feet from the said centre line of said railroad track, and twenty feet from the south-east corner of said block 35; thence westwardly, and parallel to, and twenty feet distant from, the south line of said block 35, to a point in the centre of St. Peter street; thence southwardly on the centre line of St. Peter street prolonged to the centre of the channel of the Mississippi river; thence down the centre of said channel eastwardly to the centre line of Wabasha street prolonged; thence northwardly along the centre line of Wabasha street to the place of beginning; subject, however, to the easement now existing in said premises as a public street and levee.''

The petition further sets forth '' that the names of the persons and corporations, the owners of said property, or some part thereof, as far as known to your petitioners, are the following, to wit: Hiram Rogers, Thomas Holyoke, Albert G. Brisbine, D. A. Robertson, Elizabeth Whitacre, widow and legatee of Robert Whitacre, deceased, and the city of St. Paul.''

In accordance with the prayer of the petition, three commissioners were appointed by the court, who thereafter met and examined the line of railroad and the property sought to be taken, etc., and described in the petition, and heard the allegations and proofs of the parties interested, and made and filed their report, making a separate assessment of damages to each of the owners of land, property, easement, or other right sought to be taken—it being stated in the report '' that the said award of damages is made upon the basis of said petition, to wit, that the said taking, appropriation and use of the said property by the said railroad

company is and will remain subject to the easement now existing in said premises as a public street and levee;" but no other streets than Wabasha and St. Peter are mentioned in the report, nor does it contain any description of the levee mentioned, or any further reference to it. After describing the property of Elizabeth W. Whitacre, and the damages awarded to her, the report proceeds: "That we award to Albert G. Brisbine, owner of the following-described land and property—to wit, commencing at a point south of, and twenty feet distant from, the centre line of block 35, aforesaid, prolonged; thence eastwardly, and parallel to, and twenty feet distant from, the south line of said block 35, fifty-three feet, more or less, to the west line of land owned by Elizabeth W. Whitacre, widow and legatee of Robert Whitacre, deceased; thence southwardly along said last-named line to the centre of the channel of the Mississippi river; thence westwardly up the centre of said channel, fifty-three feet, more or less, to the said centre line of said block 35, prolonged; thence northerly along said last-named line to the place of beginning—as the amount of damages arising to him, the said Albert G. Brisbine, from the taking thereof, as stated aforesaid, the sum of fifty dollars." The commissioners also awarded damages to the city of St. Paul for the taking of a piece of land described in the report, and added that these three tracts constitute the identical property described in defendant's petition. From this award the plaintiff appealed to the district court for Ramsey county.

At the trial before *Wilkin*, J., it appeared that in the original town of St. Paul, as surveyed in 1847, block 35 is bounded on the north by Bench and Third streets, on the east by Wabasha street, on the west by St. Peter street, and on the south by a strip of land, marked on the plat of such survey, filed in 1849, as Water street, and stated in the certificate on the plat to be thirty feet in width; and that the block is 100 feet in depth from the north to the south line. It also appeared that all the land between the north

line of block 35 and the river, as it then existed, was part of lots 1 and 2, of section 6, township 28, range 22, according to the survey by the United States. It also appeared that the property described in the petition, and sought to be condemned by defendant, was composed of a strip of land ten feet wide off the south side of Water street, as described on the plat, and of land south of Water street, and between it and the present margin of the river, and thence to the centre of the channel; and that the land between block 35 and the present margin of the river lay at the foot of the bluff, the top of which, at the north line of block 35, is about ninety feet above the level of the river.

The court ruled that the plat, not being in compliance with the statutory requirements, was ineffectual to work a statutory dedication of Water street to the public; and the defendant introduced evidence tending to show a common-law dedication of land south of block 35 as a street, and the user and improvement of such street by the public. The defendant also introduced evidence tending to show that, at the date of the plat, block 35, as marked thereon, extended to the river; that the street south of it had been constructed by the city, since the date of the plat, by filling the river with material taken from the bluff, and that all the land between the south line of block 35 and the margin of the river, at the date of the award, had been reclaimed from the river, since the making of the plat, by means of filling done by the city of St. Paul and by the defendant. On the other hand, the plaintiff introduced evidence tending to prove that, at the date of the plat, there was, between block 35, as therein described, and the river-margin, at the point in question, a strip of land varying in width from thirty feet at the east end of block 35, to eighty feet at the west end of the block. The location of the property sought to be condemned is shown in the diagram on page 118, in which the entire property sought to be taken is enclosed within dotted lines, and the line of the river is shown as it existed at the

date of the award. That portion for which compensation is claimed by plaintiff comprises the strip, 53 feet in width, enclosed on three sides by dotted lines, and extending to the river. On the original map or plat above mentioned, the river bank is indicated as north of, and nearly parallel with, the railroad track marked on the diagram, and on that map there is nothing between the south line of block 35 and the river to indicate the south line of a street. The track of defendant's railway was laid across the land sought to be condemned, in 1869, and has ever since been used by defendant.

The paper title shown by plaintiff was as follows : Lots 1 and 2, before mentioned, were granted by the United States to Louis Robert, by patent of June 1, 1849. Prior to the issuing of his patent, and on January 24, 1849, Robert had conveyed, by metes and bounds, to one Randall, a tract of eleven acres, forming part of lots 1 and 2, and including all the land between the north line of block 35 and the river, the plat before mentioned being made after the conveyance from Robert to Randall, and not signed by the latter. On May 10, 1852, Randall conveyed to plaintiff and D. A. Robertson " all that parcel of land which is bounded by Bench street, Wabasha street, the low-water mark on the Mississippi river, and St. Peter street, which parcel of land includes block numbered thirty-five in the original town plat of St. Paul, Minnesota Territory." On April 24, 1855, Robertson made to the plaintiff a quitclaim deed of " all that piece or parcel of land between Wabasha and St. Peter streets, in the town (now city) of St. Paul, lying east of a line drawn from a point on Bench street, on the north line of block 35, equidistant from said Wabasha and St. Peter streets, to a point also equidistant from said last-mentioned streets, on a line drawn in the Mississippi river, opposite said lands and parallel with the south line of said Bench street, as it is laid down at the point first above fixed on the block aforesaid."

On this branch of the case the defendant introduced in evidence the following conveyances by plaintiff, viz.: , On September 10, 1855, the plaintiff conveyed to Robert Whitacre " all of the east half of block 35 in the original plat of said town of St. Paul, save and excepting the following : Beginning at the centre of the north line of said block 35, on Bench street ; thence easterly along the said north line fifty-three feet ; thence southerly, parallel with a line dividing said block in the centre, as heretofore established by said party of the first part and D. A. Robertson, to a line drawn in the Mississippi river, parallel with the south line of said Bench street ; thence westerly, along said line in said river, to said division or centre line of said block ; thence northerly, along said division or centre line, to the place of beginning." On October 2, 1860, the plaintiff and his wife conveyed to Aaron G. Byram (to whom they had previously mortgaged the same property) " fifty-three (53) feet off the west side of the east half of block numbered thirty-five, (35,) in the town (now city) of St. Paul, according to the division of said block between said parties of the first part and D. A. Robertson, and being fifty-three feet in front on Bench street, and extending, of like width, to Water street."

Evidence was introduced by plaintiff, under objection and exception by defendant, tending to show the value of the land claimed by plaintiff, for use for warehouses, wharves, landing-places, levees, etc., and, in cross-examination of defendant's general manager, the following question was put to him by plaintiff's counsel, under objection and exception : "Is there any other way whereby your road can connect with the St. Paul & Pacific, the Chicago, Milwaukee & St. Paul, the St. Paul, Stillwater & Taylor's Falls, or the West Wisconsin roads, except by passing down this 'path' where you are now?" To which the witness answered : " Only by way of Minneapolis—not in this town."

The following instructions, requested by defendant, were refused by the court, and exceptions duly taken :

" 2. The title of Louis Robert to the premises in question extended only to the river, and he did not acquire by his patent any title to the bed of the river, or any part thereof."

In refusing this instruction, the court charged the jury that the title of Robert did not extend below low-water mark.

" 6. By the deeds of Brisbine to Whitacre and to Byram, the said Brisbine conveyed all the real property which had been previously conveyed to him by the said deeds from Randall to Robertson and Brisbine, and from Robertson to Brisbine.

" 7. A conveyance of a lot in a platted city, having a front upon a street extending therefrom to low-water mark of a navigable stream, vests the fee of the land upon which such street in front of such lot is laid out, to low-water mark, in the grantee."

In refusing which, the court charged that in such case the grantee would only take to the centre of the street.

" 8. If the jury find that a street was laid out and represented upon a map conveying the premises in question, and extending from the southern line of block 35, referred to in the testimony herein, to or beyond low-water mark in the Mississippi river, at the date of Brisbine's conveyance to Byram, then said last-named conveyance vested in said Byram the title in fee to the whole of said fifty-three feet in width, and extending to said low-water mark.

" 9. A person owning nothing but the fee in the soil of a public street cannot be entitled to more than nominal damages for such an additional servitude as is sought to be laid thereon in this proceeding.

" 10. Riparian rights cannot be lawfully enjoyed or held by one who is not owner of real property which forms part of a water boundary—as the bank of a navigable river— and which property can be exclusively appropriated to the use of such owner.

"11. There is nothing in this case to authorize the jury to find that the plaintiff, since the year 1860, had a right to fill up the bed of the Mississippi river, beyond the low-water mark thereof, to any extent or for any purpose whatever."

"13. The jury cannot consider the value of the land made by the railroad company on the river-bed, beyond low-water mark, as any part of plaintiff's damages herein."

In refusing this request, the court charged the jury that, in assessing damages, the jury must take into view the condition of the property at the time the commissioners in these proceedings made their award.

"15. The railroad company, defendant, is seeking to acquire the right of way over and across the premises aforesaid, under a grant of power from the state of Minnesota and the city of St. Paul, and cannot be charged with damages for such right of way over or across any portion of the Mississippi river opposite that part of block 35, formerly owned by plaintiff, beyond low-water mark.

"16. The plat of St. Paul, under the act of 1866, (Sp. Laws 1866, c. 90,) introduced in evidence by defendant, is *prima facie* evidence of the dedication of the land opposite block 35, on the south, to public use as a street."

The defendant also duly excepted to each of the following portions of the general charge of the court:

"If there was a street there, (*i. e.*, as shown on the plat,) then the plaintiff owned the fee in the south half of the street, and, owning that, had property abutting upon the river. * * * He had certain riparian rights—that is, he had a right of access to the navigable part of the stream. He had a right to make a landing-place and wharf for his own use and public use, so long as he did not interfere with the navigability of the river. If there was a street there, the only damage that can be claimed here is the interference with these riparian rights.

" In determining the question of damages, you are to take into consideration the situation of the property just as it was at the time of this condemnation.

" It is claimed here that, by these proceedings, the defendant has recognized certain rights of property in the plaintiff; and I charge you that this is true to this extent—that the plaintiff is entitled in these proceedings to nominal damages."

The jury found a verdict for plaintiff, for $1,425; a new trial was refused, and defendant appealed.

*E. C. Palmer*, for appellant.

The plaintiff's grantor only took title to low-water mark, and plaintiff's title could go no further. *Railroad Co.* v. *Schurmeier*, 7 Wall. 272; *McKeen* v. *Canal Co.*, 49 Penn. St. 424; *People* v. *Canal Appraisers*, 33 N. Y. 461; *Child* v. *Starr*, 4 Hill, 369; *Daniels* v. *Cheshire R. Co.*, 20 N. H. 85; *Babcock* v. *Utter*, 1 Abb. Ct. App. Dec. 27; *Rockwell* v. *Baldwin*, 53 Ill. 19. By the deeds put in evidence by defendant, the plaintiff conveyed the whole property to Byram. *Rutherford* v. *Tracy*, 48 Mo. 325; *Doane* v. *Willcutt*, 16 Gray, 368; *Johnson* v. *Garrett*, 25 Texas, (Supp.,) 13; *Woodman* v. *Smith*, 53 Me. 79; *Smith* v. *St. Louis Public Schools*, 30 Mo. 290. The words in the deed to Byram, " and being fifty-three feet front on Bench street, and extending of like width to Water street," do not limit the complete and perfect description which precedes them, and which would vest in Byram title to the south line of the property reserved from the Whitacre deed—*i. e.*, to the river. 'Those words merely indicate the width of the grant at that point, and not its southern boundary. They are mere surplusage, and are to be rejected if repugnant to the preceding, primary, and complete and perfect description.

Whether plaintiff had parted with his whole title under these deeds was a question of law for the court, and, after they had been received in evidence, the court erred in admitting any evidence on the question of damages. The petition does not admit title in plaintiff to any specific parcel

of land, and the action of the commissioners could not conclude the company on that question.

The evidence shows that the east half of block 35 originally extended to the river; that in high water a part of the block itself was submerged; that a street thirty feet wide was provided for along its whole river front; and that plaintiff never owned a foot of soil beyond the original river line. The city having made the street provided for in the plat, mainly if not wholly in the water, beyond the old river margin, and the defendant having afterwards filled out and graded still farther, making a still wider street, on part of which, outside the platted street, it lays its track, the plaintiff cannot claim the value of all this made land, situate beyond his river boundary. He could have no right of ownership in, and could not maintain ejectment for, the bed of the river, or any structure erected thereon, below the original low-water mark. *Austin* v. *Rutland R. Co.*, 45 Vt. 215; *Gould* v. *Hudson River R. Co.*, 6 N. Y. 522; *Harvard College* v. *Stearns*, 15 Gray, 1; *Bullock* v. *Wilson*, 2 Porter, (Ala.,) 436; *Mayor, etc., of Mobile* v. *Eslava*, 9 Porter, (Ala.,) 577; *McManus* v. *Carmichael*, 3 Iowa, 1.

The same evidence that showed the existence of block 35, and of the other streets around it, showed also the existence of Water street. The plaintiff could not question the existence of this street, and the public easement extended over whatever additions were made extending from the line of the street into the river. *Weisbrod* v. *Chicago & N. W. R. Co.*, 21 Wis. 602; *New Orleans* v. *United States*, 10 Peters, 662; *Cook* v. *City of Burlington*, 30 Iowa, 94; *Godfrey* v. *City of Alton*, 12 Ill. 29; *Doe* v. *Jones*, 11 Ala. 63; *Mayor of Jersey City* v. *Morris Canal Co.*, 1 Beasley, (12 N. J. Eq.,) 547, 558; *People* v. *Lambier*, 5 Denio, 9; *Henshaw* v. *Hunting*, 1 Gray, 203. The principle to be deduced from the cases is that the bed of the river between low-water mark on either side belonging to the government, and being, equally with the water flowing over it, devoted

to public use, whenever any part of it is converted into dry land connected with a public street or levee, it retains its public character, and the whole becomes subject to the easement of the street or levee. Even if plaintiff did own the outer half of the street or levee, he could not obstruct it with any private erections, or make any other use of it than any other citizen, and the building of defendant's track opposite and adjacent to it would affect no private right, nor entitle plaintiff to any damages. *Austin v. Rutland R. Co.,* 45 Vt. 215. For an additional servitude imposed upon land already devoted to public use, the owner of the naked fee, subject to such public easement, can recover but nominal damages. *Gould* v. *Hudson River R. Co.*, 6 N. Y. 522; *Arimond* v. *Green Bay & Miss. Canal Co.*, 31 Wis. 316, 338.

Upon the question of damages, counsel also cited *Boston & Worcester R. Co.* v. *Old Colony R. Co.*, 12 Cush. 605; *Gould* v. *Hudson River R. Co.*, 6 N. Y. 522; *Getty* v. *Hudson River R. Co.*, 21 Barb. 617; *Morris & Essex R. Co.* v. *City of Newark*, 2 Stockton Ch. 352; *Tomlin* v. *Dubuque, etc., R. Co.*, 32 Iowa, 106.

*R. B. Galusha* and *Gilman, Clough & Lane*, for respondent.

CORNELL, J. The tract of land which the company, by its petition, seeks to have condemned is therein described as embracing a portion of both St. Peter and Wabasha streets, extending from the Mississippi river back, and no other street or levee is indicated as existing in said tract. It is stated in the petition that such tract is sought to be taken " subject, however, to the easement now existing in said premises as a public street and levee," and that the plaintiff Brisbine, and others therein named, are, as far as known to petitioners, " the owners of said property or some part thereof," without specifying the particular portion belonging to each, nor whether the same is held and owned by them in common or in severalty. It appears from the

report of the commissioners appointed under this petition
that they ascertained and awarded damages in respect to the
entire tract separately in favor of the different owners, and
upon the " basis stated in the petition, viz., that the said
taking, appropriation, and use of the said property by the
said railroad company is, and will remain, subject to the
easement now existing in said premises as a public street
and levee," and that they made a separate assessment of
damages in favor of plaintiff as the owner of a portion of
said tract, fifty-three feet in width on the river, and extend-
ing therefrom back across the tract, of that width, as therein
particularly described.   No portion of this fifty-three-foot
strip is contiguous either to St. Peter or Wabasha streets.
From this award Brisbine, as the owner of such parcel,
appealed to the district court, where a verdict was rendered
in his favor of $1,425, and from the order refusing to set
aside the verdict, and denying a new trial, the company
appeals to this court.

One of the matters litigated and in controversy before
the jury in the district court relates to the existence of a
public street, thirty feet in width, extending across this
strip of land next to the river, referred to in the testi-
mony as " Water street," and the point is made by the
company that this is the easement mentioned in the petition,
and, hence, the fact of its existence should have been
assumed on the trial of the appeal, and the jury instructed
to estimate plaintiff's damages upon that basis, and the
court, therefore, erred in allowing any enquiries to be made
in regard to this alleged easement.

To this it is a sufficient answer that no such alleged ease-
ment is referred to in the petition, the only streets therein
mentioned being St. Peter and Wabasha streets, portions of
each of which are included in the description of the tract
specified as the one sought to be condemned.   Assuming,
however, that the petition " fully and clearly stated that an
easement, such as is claimed for Water street," existed in the

premises, the plaintiff was not concluded by such statement from controverting the alleged fact, either before the commissioners or upon the trial of the appeal from their award. The law under which the company acted in instituting and conducting the proceedings in this case is the act of March 1, 1870, entitled " An act relating to the St. Paul & Sioux City Railroad Company." Sp. Laws 1870, c. 73. By section 3 of this act it is provided that all proceedings thereafter taken by the company, for the purpose of condemning land to its use, shall be governed by the provisions of sections 13 to 27, inclusive, of chapter 34, title 1, of the Revised Statutes then in force, relating to corporations, save that the proceedings should be had in, and the commissioners appointed should be residents of, the county where the property was situated, or the county to which it was attached for judicial purposes.

Under these provisions commissioners were appointed upon the *ex parte* application of the company ; and although the company was required to state in its petition " a general description of the land, property, and real estate " sought to be taken, and the names of the owners, if known, yet it was not requisite that they should receive, nor did they in fact have, any notice of such application, and hence had no opportunity upon the hearing to raise any question as to the correctness of the company's statement in regard to the ownership of the property. The first opportunity the claimant had to be heard in the proceedings was before the commissioners, of whose meeting for the purposes for which they were appointed he had notice ; and as it is made the duty of the commissioners to hear the allegations and testimony of all parties interested, and to make a separate assessment of damages in favor of each owner, it necessarily follows that where, as in this case, the company has not in its petition specified the separate interest and estate of each, the very first enquiry to be made and settled by

them is the one relating to the extent and character of such estate and interest, in order to determine the damages accruing to its owner; and, in so far as an enquiry into the title is necessary to the determination of this question, it is a proper matter for the consideration of the commissioners. So, in case the claimant's estate and interest is incorrectly stated in the petition, he is not thereby concluded and prevented from asserting and proving his real claim, interest, and estate, although, as was held in *Knauft* v. *St. Paul, Stillwater & Taylor's Falls R. Co.*, 22 Minn. 173, and in *Rippe* v. *Chicago, Dubuque & Minn. R. Co.*, ante p. 18, the company would be estopped from disputing such his claim and title on an appeal from an award made upon that basis by the consent of both parties. Whenever, therefore, either by an indefinite statement in the petition as to the interest of the claimant in the property, or by one not accepted by him as true before the commissioners, it becomes necessary for them to enquire into and decide the question of title or interest as incidental to the question of damages, it is proper matter for their consideration, and their decision thereon is reviewable, upon appeal, in the district court.

Assuming, therefore, that a public easement, such as is claimed for Water street, was specifically alleged to exist in the premises, by the petition, the plaintiff, Brisbine, was not thereby precluded from controverting the alleged fact before the commissioners, nor the court from reviewing their decision thereon upon the trial of the appeal from their award. Inasmuch, also, as the particular portion of the tract of which plaintiff was alleged to be a part-owner was not specified in the petition, this, too, became a proper subject for investigation and decision, both before the commissioners and upon the trial of the appeal.

It follows, from these views, that the district court was correct in allowing an enquiry to be made into plaintiff's title, and the existence of the alleged easement, for the

purpose of ascertaining the character and extent of his estate and interest, and also in its instruction to the jury that "the company, by its proceedings, had so far recognized certain rights of property in the plaintiff that the latter was entitled to nominal damages."

It is contended on the part of the company that the plaintiff, in his deed to Whitacre, recognized and admitted as a fact that block 35 extended to the Mississippi river, and that there was no intervening land between it and the river; that the description in his deed to Byram must be construed in reference to this admitted fact, and, as such description included all of the block to which he had any title, there was nothing left in him between it and the river. In the Byram deed no reference whatever is made to the former conveyance to Whitacre, nor to the description therein contained. An admission in the latter, even though good as to Whitacre and his grantees, would not be binding or conclusive upon plaintiff as against Byram and his grantees. The grant to Byram is to be determined by his deed, and not by what was reserved in the conveyance to Whitacre.

The concluding clause of the description in the Byram deed—"and being fifty-three feet in front on Bench street, and extending of like width to Water street"—expressly limits the grant therein made to Water street, whatever it was. If the street was one in which the public had acquired an easement by either a statutory or common-law dedication, the grant extended to its centre line, subject only to such easement; otherwise, it terminated at the dividing line between it and the block.

In this latter case the absolute title in fee to all the land between such dividing line and the river at low-water mark undoubtedly remained in the plaintiff, together with all such riparian rights as follow the ownership of real estate bordering upon a navigable stream. What these rights are, especially in regard to land acquired originally from the United States, and bordering, as this does, upon the Mis-

v.23m—9

sissippi river, we regard as fully and correctly settled by the Federal Supreme Court. *Dutton* v. *Strong*, 1 Black, 23; *Railroad Co.* v. *Schurmeier*, 7 Wall. 272; *Yates* v. *Milwaukee*, 10 Wall. 497. According to the doctrine of these decisions, the plaintiff possessed the right to enjoy free communication between his abutting premises and the navigable channel of the river, to build and maintain, for his own and the public use, suitable landing-places, wharves, and piers, on and in front of his land, and to extend the same therefrom into the river, to the point of navigability, even though beyond low-water mark, and to this extent exclusively to occupy, for such and like purposes, the bed of the stream, subordinate and subject only to the navigable rights of the public, and such needful rules and regulations for their protection as may be prescribed by competent legislative authority. The rights which thus belonged to him, as riparian owner of the abutting premises, were valuable property rights, of which he could not be divested without consent, except by due process of law, and, if for public purposes, upon just compensation. *Yates* v. *Milwaukee*, 10 Wall. 497.

If, as is claimed by defendant, Water street was in fact a street lawfully dedicated to public use as such, whatever its actual width—whether occupying the whole or only part of the intervening space between the block and the river—the fee of the south or river-side half thereof remained in the plaintiff, subject only to the specific easement created by the act of dedication. *Banks* v. *Ogden*, 2 Wall. 57. No additional servitude could be imposed upon it against his will, except for some public purpose, and upon compensation as provided by law. The company had no right to occupy it for the purposes of its road, nor could it acquire any such right from the city of St. Paul. *Gray* v. *First Div. St. Paul & Pacific R. Co.*, 13 Minn. 315; *Schurmeier* v. *St. Paul & Pacific R. Co.*, 10 Minn. 82. Being such owner in fee of this half of the street, even though no soil was left

remaining between it and the river at low-water mark, he was a riparian proprietor of land bounded by a navigable stream, and certainly possessed of all the rights appurtenant to such ownership. *Banks* v. *Ogden*, 2 Wall. 57 ; *Yates* v. *Milwaukee*, 10 Wall. 497.

There is nothing in the case tending to show that the plaintiff or any of his grantors had ever parted with any of these rights. The plat of the " City of St. Paul," or " Lower St. Paul," introduced in evidence, which is the foundation upon which rests the claim that Water street is a public street and levee, indicates no intention on the part of the proprietors of that plat to dedicate any portion of the premises in question to public use for the purpose of a levee or landing. Water street is therein designated as a street thirty feet wide, and there is nothing on the plat to indicate its dedication to any other purpose or use than that of an ordinary street in a city. Hence, the point raised upon the argument as to the effect of a dedication, for levee purposes, of a strip of land bordering upon the river, upon the riparian rights of the proprietor, is not properly before the court for consideration.

That this plat was ineffectual as a statutory dedication was expressly decided in *Baker* v. *City of St. Paul*, 8 Minn. 491. Neither did the act of February 14, 1866, (Sp. Laws, 1866, *c.* 90,) and the record of the plat thereunder, give it any such effect, or constitute any evidence of dedication as against the plaintiff, as he was not a party thereto, and the original patentee, Robert, had parted with his interest in the premises in question prior to his joining in the execution of the plat.

Whether any public easement existed in the premises, by virtue of a common-law dedication, depended upon the intention of the parties to such alleged dedication, which, as a question of fact, was properly submitted to the jury upon the whole evidence, under instructions unquestionably correct as to the rules of law applicable thereto.

The whole case seems to have been correctly disposed of by the trial court, and none of its rulings upon the admissibility of evidence, or in its instructions to the jury, furnish any just ground for a new trial.

Order affirmed.