HARRIET F. WAIT *vs.* CHARLES MAY *et al.*

Argued Oct. 26, 1891. Decided Feb. 23, 1892.

**Deed of a Lot Construed to Include Riparian Rights across the Street.**—Occupants of certain government lands caused the same to be platted as a town site, with a street along the bank or shore of a navigable lake. Thereafter this town site was entered and purchased, and title thereto obtained by a judge of the district court, as provided by act of congress of May 23, 1844. In the execution of his trust said judge conveyed to one of the beneficiaries a lot fronting upon the street before mentioned, describing the same in accordance with the town plat. *Held*,

that the fee title, subject to the public easement, to the entire street to low water mark, including all riparian rights, passed to the grantee named in the official deed, and also passed to plaintiff, through subsequent conveyances, in which was the same general description.

Appeal by defendant the St. Paul, Minneapolis & Manitoba Railway Company from an order of the district court of Hennepin county, *Lochren*, J., made April 19, 1891, refusing a new trial.

This action was commenced in August, 1888, against Charles May, Frank Bardwell, and the above-named railway company to recover the possession of the shore, and the pier built out therefrom into Lake Minnetonka, in front of lot five, in Excelsior, Minn., and to recover damages for withholding the possession, and to enjoin the railway company from operating its road over the property. The village of Excelsior was incorporated by Sp. Laws 1877, ch. 4. The village council, by ordinance, on October 4, 1880, authorized the Minneapolis & Lake Park Railway Company, its successors and assigns, to construct its tracks, wharves, and depot on the lake shore across the street in front of this lot. The defendant the Manitoba Company succeeded to these rights. The other defendants are its tenants. May kept a restaurant on the property. The issues were tried November 28, 1890. The trial court found that plaintiff was the owner and entitled to the possession of lot five, subject to the public easement of a street and levee, saying: "Ordinarily the owner of a lot in a platted town is the owner of the fee of the adjacent street to its center, subject to the public easement, not as appurtenant to, but as parcel of, his lot, but when Judge Sherburne conveyed to Galpin lot five, fronting on Lake street, which street in its width extended to low water mark on the shore of the lake, the situation of the property and the circumstances of the transaction raised the presumption that the fee to the entire width of Lake street, and to low water mark, passed by that deed, as part and parcel of the lot; and it became, by the platting and the conveyance, part and parcel of that lot. The whole also passed by the deed from Galpin, as it contained no restrictions nor any language showing an intention to reserve to the grantor any part or

parcel of that lot. The same reasoning applies to all intermediate conveyances between Galpin and the plaintiff. *In re Robbins,* 34 Minn. 99."

*Benton & Roberts,* for appellant.

The contention in this appeal depends mainly upon the construction to be given to the deed of Judge Sherburne. He conveyed to Galpin lot five in the original plat of Excelsior. By that plat, lot five appears to be bounded on one side by Lake street, and the effect of the conveyance is precisely the same as if it had been described as bounded on the northeast by Lake street. The fee of the opposite half of the street adjoining the water remains with all its riparian rights in the grantor. *Banks* v. *Ogden,* 2 Wall. 57; *Brisbine* v. *St. Paul & S. C. R. Co.,* 23 Minn. 114.

The presumption is that Judge Sherburne intended to retain what he did not convey, by the same tenure and for the same uses that he held the original before any part was conveyed. It is not material whether the land between the street and the navigable waters of the lake was any part of it dry land, or was all covered by shallow water. In either event there are proprietary interests between the street and the lake. *Hanford* v. *St. Paul & D. R. Co.,* 43 Minn. 104; *Gilbert* v. *Eldridge,* 47 Minn. 210.

Ordinary low water is not the line of riparian ownership. That line is established in this state as extreme low water. *Railroad Co.* v. *Schurmeir,* 7 Wall. 272.

Unless it was either dry land, or land of which the riparian proprietor was the owner in fee, it was certainly error in the court below to sustain an action of ejectment. *Austin* v. *Rutland R. Co.,* 45 Vt. 215. However this may be, the question at issue is whether the language in Judge Sherburne's deed is to be construed so that, instead of bounding the land by the street, it shall be bounded by the lake. His was an official trust. The laws defining that trust were the act of congress of May 23, 1844, (5 U. S. Stat. p. 657,) and the act of the legislative assembly of the territory, of March 3, 1855, (Laws 1855, p. 28.) From these statutes we think it may be fairly inferred that the trustee should hold all the land that was not conveyed in severalty for the use and benefit of the municipality. It

was either this, or else he was to hold subject to such further regulations as the legislature might enact, because the act of congress put the whole disposal of those lands into the control of the territorial or state legislature. If the trustee held for the benefit of the town, then it was competent for the state legislature to make the provision it did in the charter of Excelsior to give the entire control of that unconveyed strip between the street and the lake to the village corporation to dispose of in its discretion. If, on the other hand, the trustee held subject to the direction of the state legislature, then the provisions of the charter of Excelsior were valid and applicable to this land.

It is not necessary to establish an affirmative right on the part of the defendant. The simple question here is whether Judge Sherburne's deed to Galpin conveyed this strip of land between the street and the lake. If it did not so convey it, the plaintiff has not acquired it. The court below held that an unnatural construction of the language of that deed was forced by the circumstances of the case.

This is not a case where a street was dedicated to the public by the owner of the land. Galpin never had any other title to the land than the one he got by this deed. By the deed he was bounded by the street. He was not bounded by a public landing. The difference between a boundary by a street and by a public landing is that there is nothing between a public landing and the navigable water, while in case of a street there is always a strip of either wet or dry land between the line of the street and the deep waters of the lake. This strip of land carries riparian rights, among which are the right of private landing and the rights of accretion and reliction.

In view of what has been said, it is hardly necessary to notice the claim made by plaintiff that the principle stated by this court *In re Robbins*, 34 Minn. 99, determined this case. If Galpin became the owner of the land between the street and the lake, whether wet or dry, his deed to Bickford did not convey that strip, because he was a private individual, and there is no reason to presume that he did not intend to hold for his own use whatever was not described by the terms of his conveyance.

*Thompson & Taylor* and *A. B. Choate,* for respondent.

At the time of the platting and of the conveyance by Judge Sherburne, the claimant, Galpin, occupied lot five, and all the land in front thereof to the lake, and in connection therewith used the shore for access to the lake for boating and other purposes.

When we consider the facts, the conclusion is irresistible that the deed to Galpin of lot five in the original plat of Excelsior was intended to convey and did convey the title, not only to the middle of the street, as in ordinary cases, but, under the circumstances of this case, to the water's edge, at low water mark, as part and parcel of the grant. *In re Robbins,* 34 Minn. 99, 102; *Taylor* v. *Armstrong,* 24 Ark. 102.

COLLINS, J. In the year 1854 several persons were occupying land belonging to the general government at a certain point on the southerly shore of Lake Minnetonka, a body of water, navigable by steamers and other water craft of considerable size. Under their direction, and by one of their number, a town site was surveyed out and platted, named "Excelsior," and this plat was filed for record in the office of the register of deeds for the proper county June 26th of that year. Upon and along the shore of the lake there was laid out a street, stated upon the plat to be 99 feet in width, named "Lake Street." According to the scale given upon the plat, however, this street, opposite the lot 5, hereinafter mentioned, appears to be 150 feet wide, and extends in width to the waters of the lake. As a matter of fact, at the time of making the plat, and at all times since, the distance between the front line of said lot on Lake street, as marked by stakes set in the ground when the survey and plat were made and by the person who made the same, and also the street line of the lot, as the latter has been constantly used and occupied for the past thirty years, was and is less than 99 feet distant from the waters of the lake at ordinary low water mark. The shore in front has been habitually used by the owners of the lot and by the general public for boating and like purposes, since the survey, except as that use has been interfered with by the defendant corporation, as specified hereinafter. The title to the land so conveyed and platted remained in the United States until April 17, 1856, when the Hon-

orable Moses Sherburne, as judge of the proper judicial district, and in accordance with the act of congress of May 23, 1844, (5 U. S. Stat. ch. 17, p. 657,) purchased and entered the same at the local land office, in trust for the several use and benefit of the occupants thereof, and according to their respective interests. Among the occupants of the land so entered was one George Galpin, to whom, in the execution of his trust, on July 8, 1856, Judge Sherburne executed and delivered his deed of conveyance in due form, whereby he granted and conveyed to Galpin, his heirs and assigns, among other lots, those numbered 5 and 22 "in the original plat of said Excelsior." In 1865 Galpin and his wife duly conveyed "lots five and twenty-two of the original plat of Excelsior" to one Bickford. Plaintiff's title is derived from the last-named person through several mesne conveyances of the same lots, which adjoin, and have always been used as one tract of land. For several years defendant corporation has kept and maintained its roadbed and railway tracks on Lake street along and in front of lot 5, (lot 22 being in rear of lot 5,) but not nearer than 75 feet from the front line of lot 5 as traced on the plat, and has erected on the shore, and in and over the water of the lake, a wharf and a pavilion for the use of railway passengers. In the complaint possession of the premises so occupied was demanded, with damages for the detention; and, further, that the defendant corporation be forever restrained from maintaining its roadbed, tracks, and pavilion thereon. On proper findings of fact judgment was ordered in plaintiff's favor, and this appeal is from an order denying defendant's motion for a new trial.

It is the claim of defendant corporation that by the deed from Judge Sherburne to Galpin the latter acquired title to the center of Lake street only in front of lot 5, and that the fee of the opposite or southerly half, on which the roadbed and structures were built and maintained by defendant, remained, with all riparian rights, in the grantor, Sherburne; citing *Brisbine* v. *St. Paul & S. C. R. Co.*, 23 Minn. 114, and the federal authority therein relied on, *Banks* v. *Ogden*, 2 Wall. 57. It must be admitted that had Judge Sherburne actually owned and platted the tract of land on which the town site of Excelsior was located, and had then executed and delivered the

deed of date July 8, 1856, nothing further appearing in relation to the facts and circumstances, it would be extremely difficult to say that Galpin acquired title to any part of the street southerly of its center line, that being where all of defendant's improvements have been placed, without ignoring these cases, for, according to the doctrine therein tersely announced, if the owner of a tract of land bordering upon a navigable stream or lake plats it for a town site, with a street along the bank, reaching the low water mark, and then conveys a lot fronting on the street, his grantee ordinarily takes title to the center line of the street only, the fee to the other or opposite half remaining, with all riparian rights, in the grantor. But from the qualified language used it is obvious that the rule was not asserted as an inflexible one, from which there could be no departure, but simply as governing under ordinary conditions. In fact, it was an application of the doctrine that, where by the terms of a deed the land conveyed is bounded by a street or highway, the grantee takes presumptively to the center of the way; or, where lots are conveyed in accordance with a town plat, the deed is presumed to include a grant of the soil to the center of the street, subject to the public easement. And it is also obvious that in neither of these cases was it actually considered whether a like case might be determined by the facts and circumstances in hand. But later, when the question was whether this rule prevailed when the street was located on the margin of the tract, but wholly on the land of a prior grantor, so that he owned nothing beyond, it was held that the presumption before referred to must yield when a different intention is clearly manifested, or where the evidence showed that there could be no foundation for it, and that the whole of the street opposite the conveyed lot passed to the grantee. *In re Robbins,* 34 Minn. 99, (24 N. W. Rep. 356.) The conclusion was that the entire street abutting on the lots in question belonged to and passed with them, under the general description in the deed of the original proprietor; citing *Taylor* v. *Armstrong,* 24 Ark. 102, wherein the real issue was precisely like the one herein involved, namely, the ownership of a strip of land lying in a street laid out upon the bank of a navigable body of water.

The principles announced and which governed in the *Robbins Case*

are pertinent here, and a proper construction of the deed to Galpin is a question of interpretation and intent. Its scope and effect in respect to the extent of the grant in the street are to be determined by the common rules of interpretation. Regard must be had to the situation of the parties, the primary rights of the grantee as an occupant of the land prior to the entry, the manner in which, and purposes for which, the grantor obtained title; that is, the state of the title, and the situation of the lots, streets, and lake, as well as the language of the deed. The usual presumption, based, as it is, upon another presumption, that the center of the street or highway is the boundary line between adjoining proprietors, and hence each owns the fee to the center of the way, must yield when it appears that there is not only an absence of the foundation on which it rests, but cogent reasons why such a rule can have no application. In the case at bar it was shown that occupants of government lands, whose rights as such occupants were recognized and protected by statute, among them Galpin, platted the town site of Excelsior to the water's edge, undoubtedly for the purpose of acquiring title in the manner provided by law. As the place was unincorporated, it became the duty of the district judge to enter, purchase, and thus obtain title to the town site, for the several use and benefit of the various occupants, according to the rights of each. He received and held the title strictly under the statute as trustee for each of the occupants. He had no proprietary or beneficial title or estate vested in himself to any portion; or for any purpose whatsoever, as against those entitled by virtue of occupancy, and it was his official duty to convey to each of these in accordance with their rights or interests as they existed when entry was made.

It is palpable that it was the purpose and intent of the federal statute, and of the territorial act of March 3, 1855, ch. 7, enacted in aid of it, that the designated official should convey all that he procured under his entry, and reserve no part of it. His position as an official trustee was such that, when deeding, he necessarily conveyed to those entitled all that was appurtenant to or a part of their estate, or which could possibly pass under a general description in a deed. It is apparent from the circumstances that there was no adverse occupant between Galpin and the lake shore, so that, had Judge Sher-

burne undertaken by direct means to reserve to himself, or to convey to another, that part of the street in front of lot 5 which appellant's counsel now insist he reserved by implication, or which has in some indefinite and unexplained manner gone into the hands of the municipal authorities, namely, the south half of the street, with all riparian rights, it would have been in total disregard of his fiduciary character, and a clear violation of his official duty. He used and referred to the town plat in the execution of his trust; not because it was the intention of the law under which he acted, or his own intention, to withhold or reserve the fee title to any part of the public ways, but for convenience, and because the statute evidently contemplated this method of designating and describing the parcels each occupant was entitled to. He held the legal estate in fee, in trust for certain beneficiaries; and, as they had previously dedicated the streets and alleys for public use, he might well convey to them in accordance with the plat which they had caused to be made. *City of Winona* v. *Huff*, 11 Minn. 119, (Gil. 75.) In the absence of a statute indicating that this official trustee withheld or reserved any rights or interests in the streets and alleys when he conveyed, or that the fee title to all or a portion of such streets and alleys went elsewhere by operation of law, it must be held that the fee in the street opposite lot 5 to low water mark, with all shore rights, passed to Galpin by virtue of the official deed.

It is insisted, however, by counsel for appellant, that, although this be the conclusion, Bickford, who was Galpin's immediate grantee, acquired title to the northerly half of the street only, the fee title to the southerly half, with all riparian rights, remaining in Galpin. As before indicated, the latter obtained title to the entire street, because it was a part and parcel of lot 5, necessarily passing with a grant of that lot, just as the fee of a street to the center line thereof passes under a general description of a lot bordering on the same, where the ordinary presumption prevails as to the rights and interests of adjoining proprietors in the ways; and as such part and parcel of lot 5 it passed to Bickford under the general description, and in the absence of language in the deed, or circumstances indicative of a contrary intention, precisely as the fee title of plaintiff's

grantees in *Brisbine* v. *St. Paul & S. C. R. Co., supra,* would have passed by their conveyance had they acquired by means of Brisbine's deed what the court held they did not acquire, namely, the fee to the south, or river side half, of Water street. As the whole of the street was conveyed to Galpin by a general description of the lot, so the whole was conveyed by him when he deeded to Bickford by the same general description. And in the subsequent conveyances through which the title came to this plaintiff, there has been no substantial variation from this same description.

Order affirmed.

(Opinion published 51 N. W. Rep. 471.)