(Opinion published 52 N. W. Rep. 910.)

---

VILLAGE OF WAYZATA *vs.* GREAT NORTHERN RY. Co.

Argued June 13, 1892.   Decided July 12, 1892.

**Street Bounded by Navigable Lake Extends to Low-Water Mark.**
Where, upon a town plat, a street is laid down, and the only boundary for part of the street on one side is a navigable lake or river, the street extends to low-water mark, and the dedication will be held to have been intended to enable the public to get to the water for the better enjoyment of the public right of navigation.

**Railway Charter Construed as to Tracks in a Highway.**
Where the charter of a railroad company gives it a right to construct its railroad upon and along any highway, road, street, etc., if necessary, but requires the company to "put such highway," etc., "in such condition and state of repair as not to impair or interfere with its free and proper use," the requirement is a continuing one, so that the company may at all times be required to keep the highway in the specified condition and state of repair, so far as consistent with the presence of the railroad upon it.

**Possession under Such Right is not Adverse.**
The possession of a railroad company entering under such a right given in its charter, no other claim of right appearing, and there being no exclusion of the public use, is consistent with, and not hostile to, the public right, and is not adverse.

**But to Occupy a Part of the Highway with Buildings May be Adverse Possession.**
But where the charter does not authorize the construction of buildings on the highway, the occupation of parts of the highway with such buildings in exclusion of the public use may be adverse to the public right, and may ripen into title by adverse possession.

**Facts Litigated that were not in the Issues.**
Where the facts found justify the judgment, and were litigated without objection at the trial, it is too late afterwards to object that proof of the facts was not admissible under the pleadings, or that the relief granted was not prayed for in the complaint.

Appeal by both plaintiff and defendant from a judgment of the District Court of Hennepin County, *Canty*, J., entered January 7, 1892.

After the reversal in this court of the order denying plaintiff's motion for a new trial, 46 Minn. 505, the action was again tried before the court without a jury.   On January 4, 1892, the court made and filed its findings and ordered judgment for plaintiff.   It was entered and both parties appealed.   The thirteenth finding of fact was as follows:

"But in order to put said street in such a condition and state of repair, as not to impair or interfere with its free and proper use by the public, it is necessary that defendant be limited to the maintenance in said street, of one ordinary width double track railroad, without any connecting switches; which said track shall be distant from the northerly line of said street at least 65 feet; and shall be on a grade level with the grade of said street and shall be planked for crossings the entire width of Broadway, Minnetonka and Walker streets; which said double track railroad shall be used in said street only for the passage of trains through the village; and defendant shall make no other use of said street than as above provided; and shall not have or maintain in said street or in Broadway street, any other obstructions to said streets, except its telegraph poles, which shall be on a line distant, as far as practicable, from the northerly line of Lake street; and that defendant shall grade said Lake street between said double track and said low water mark on the southerly side of said track, so as to provide for plaintiff at all times, suitable and convenient access to said lake by filling in the shore of said lake to said low water mark, and sloping the same gradually from said tracks to said low water mark."

The railway company, on its appeal, assigned error upon this finding as follows:

"Third.   There was error in so much of the finding of said court numbered thirteen as purports to determine what was necessary to put said Lake street in such condition and state of repair as not to impair or interfere with its free and proper use; and in so much

thereof as attempts to state the conditions on which said appellant may use and maintain its railway within said village of Wayzata."

*Benton, Roberts & Brown*, for defendant.

The absence of words in the plat to show that the dedication was for a public landing, show it was dedicated for street purposes only. *Brisbine* v. *St. Paul & Sioux City R. Co.*, 23 Minn. 114; *Banks* v. *Ogden*, 2 Wall. 57; *Wait* v. *May*, 48 Minn. 453; *Hurley* v. *Mississippi, etc., Boom Co.*, 34 Minn. 143.

Of the authorities usually cited, instances where land has been held to be dedicated for the purposes of a public landing, most of them show the intent to create a public landing by the express terms of the dedication. Such is *Mankato* v. *Willard*, 13 Minn. 13.

Other cases are authority to the effect that the foot of a street extending to the water will be presumed to be a public landing. Of this class is *McMurray* v. *Mayor, etc., of Baltimore*, 54 Md. 110.

In order to perfect a dedication by plat there must be an acceptance by the public or public authorities and the dedication is accomplished only to the extent of this acceptance. No acceptance in this case was shown. Angell, Highways, § 157; *Commonwealth* v. *Fisk*, 8 Met. 238; *City of Oswego* v. *Oswego Canal Co.*, 6 N. Y. 257; *State* v. *Trask*, 6 Vt. 355.

*Rea & Hubachek*, for plaintiff.

One question raised by this appeal is, whether or not, by the plat of Wayzata, there was a dedication of the shore of Lake Minnetonka, where it touches Lake street, to low-water mark for a public highway, as held by the trial court. We contend there was such dedication. *Village of Wayzata* v. *Great Northern Ry. Co.*, 46 Minn. 505; *Barclay* v. *Howell's Lessee*, 6 Pet. 498; *Godfrey* v. *City of Alton*, 12 Ill. 29; *Barney* v. *Keokuk*, 94 U. S. 324; *New Orleans* v. *United States*, 10 Pet. 662; *Village of Mankato* v. *Willard*, 13 Minn. 13, (Gil. 1); *Church* v. *Meeker*, 34 Conn. 421; *Potomac Steamboat Co.* v. *Upper Pot. S. Co.*, 109 U. S. 672.

The plat indicating the water line of the lake as the boundary of the street, and there being no other boundary line indicated upon

the plat, the court must give this boundary line its ordinary interpretation. The inevitable result of such interpretation of the dedication of Lake street, is to give plaintiff and the public whom it represents, where said street borders upon the lake, free access to the water, with the right to build piers and wharfs beyond the water line, and to the point of navigability. *Brisbine* v. *St. Paul & Sioux City R. Co.*, 23 Minn. 114; *Carli* v. *Stillwater St. Ry. & T. Co.*, 28 Minn. 373; *Union Depot, etc.,* v. *Brunswick,* 31 Minn. 297; *Hanford* v. *St. Paul & Duluth R. Co.*, 43 Minn. 104.

Where a plat is made and recorded the use of the streets, alleys, and public grounds become *eo instanti,* the property of the public by statutory dedication. *Weisberger* v. *Tenny,* 8 Minn. 456, (Gil. 405;) *Baker* v. *City of St. Paul,* 8 Minn. 491, (Gil. 436;) *City of Winona* v. *Huff,* 11 Minn. 119, (Gil. 75.)

The enjoyment by the public of its easement on Lake street is practically destroyed by defendant's occupation of it. If its tracks remain on that street plaintiff's right to maintain a public landing on its lake front is absolutely destroyed. Defendant has not the right under the provision of its charter, to deprive plaintiff of this valuable franchise.

GILFILLAN, C. J. On the plat of the village of Wayzata, Lake street is delineated thus:

As appears from this, the lake curves upon the street. At the nearest point the north line of the street is distant from high-water

mark sixty-five feet; from low-water mark, one hundred and twenty-five feet.

On this showing the question presented is, where is the southern boundary of the street along the water,—that is, between the artificial boundaries made by the short line on the east and the short line on the west, which must be taken to mark the southern line of the street at those points? Was it intended that the street between those lines should be one hundred feet wide, or that it should go to high-water mark or to low-water mark? Where the southern boundary of the street runs is a question of intention to be ascertained by the plat itself, there not appearing to have been any monuments placed on the ground to mark such boundary. It can hardly be supposed it was the intention to make the street, along that part of it, just one hundred feet wide, for the most obvious and natural means to indicate such intention was to continue the short lines we have mentioned across the water till they met. The fact that they stop at the water shows that they were not intended to indicate the boundary any further. There is nothing else to indicate it but the natural object, the lake; and that must be taken to have been the boundary intended. We know of no rule for determining the extent of a grant or dedication of land to public use, where a navigable lake or river is adopted as one of the boundaries, other than that applied in the case of a private grant. Where, in a private grant, the land is bounded only by navigable water, the grantee takes to the low-water mark,—*Schurmeier* v. *St. Paul & Pac. R. Co.*, 10 Minn. 82, (Gil. 59;) *Brisbine* v. *St. Paul & Sioux City R. Co.*, 23 Minn. 114; *Carli.* v. *Stillwater St. Ry. & T. Co.*, 28 Minn. 373, (10 N. W. Rep. 205;) *Union Depot, etc., Co.* v. *Brunswick*, 31 Minn. 297, (17 N. W. Rep. 626,)—and the riparian rights go with the upland. Where the grant or dedication to the public is for the purpose of passage, and goes to the water, the conclusion—there being no indication of a contrary intention—is inevitable that the grant or dedication was intended to enable the public to get to the water for the better enjoyment of the public right of navigation.

The lake at its low-water stage was, therefore, the southern boundary of Lake street at the place indicated.

The charter of the Minnesota & Pacific Railway Company (Laws Ex. Sess. 1857, ch. 1, § 7) granted it " the right and authority to construct its railroad and branches upon and along, across, under, or over any public or private highway, road, street, plank road, or railroad, if the same shall be necessary; but the said company shall put such highway, road, street, plank road, or railroad in such condition and state of repair as not to impair or interfere with its free and proper use."

The corporation which succeeded to the franchises of that company laid its track upon and along Lake street, and maintained it there until such franchises and the railroad passed to defendant, which continues such use of the street. It is unnecessary to consider whether the condition attached by the charter to the right to lay a railroad in a public highway or street, to wit, "if the same be necessary," is a continuing condition, so that, if a court should consider it no longer necessary, it might order the railroad to be removed; for the trial court found, and the evidence sustains the finding, that it is now necessary to maintain the railroad on the street.

But the condition, "the said company shall put such highway, road, street, plank road, or railroad in such condition and state of repair as not to impair or interfere with its free and proper use," is, from its nature and manifest purpose, a continuing one, so that the company may at all times be required to keep the highway, etc., in the specified condition and state of repair, so far as reasonably consistent with the presence of the railroad upon it. This justified the court, upon the facts found, in directing what the defendant should do to meet the requirement of the condition. So far as the findings of facts are sufficiently pointed out in the assignments of error to call upon us to examine them, we see no reason to doubt their correctness. There is no sufficient assignment of error to the facts specified in clause thirteen of the findings, the assignment being general as to all of them,—of which there are at least half a dozen.

When a railroad company, with such a right granted it in its charter as the above-quoted clause from defendant's charter, lays its track upon and along a road or street, it will be presumed to have entered and to be in possession under that right, and its possession

will be consistent with, and not hostile or adverse to, the public right. Something more than the mere presence of the track upon the road or street—a claim of a hostile right, or an exclusion of the public from the use—will be required to show the possession adverse to the public.

The clause quoted does not contemplate the construction upon a road or street of the company's stations, depots, or other buildings, nor the use of it as a railroad yard.

There being no charter right to which the occupation of the street by buildings could be attributed, and as such occupation of the spaces covered by the buildings was necessarily in exclusion of the public use as a street, and so hostile to the public right, adverse possession of the parts of the street thus exclusively occupied may be claimed. The court below seems to have found such possession adverse, and sustained the defense as to the parts of the street thus held adversely for more than twenty years before the action was commenced. It overruled the defense as to the parts of the street so occupied for less than twenty years, and therein it was right, for the law reducing the time to fifteen years did not go into effect until after the action was commenced.

The judgment rendered was appropriate to the facts found. Those facts appear to have been litigated without objection at the trial, and it is now too late to raise the objection that proof of them was inadmissible under the pleadings, or the objection that the relief granted was not prayed for in the complaint.

Judgment affirmed.

(Opinion published 52 N. W. Rep. 913.)