**Patrick J. McLAFFERTY,
et al., Appellants,**

v.

**John B. ST. AUBIN, et al., Defendants,**

**and**

**City of Shoreview, Intervenor,
Respondent.**

No. C5–92–2249.

Court of Appeals of Minnesota.

May 25, 1993.

Peter J. McCall, Stapleton, Nolan & McCall, P.A., St. Paul, for appellants.

Jerome P. Filla, John Michael Miller, Peterson, Fram & Bergman, St. Paul, for respondent.

Carla Heyl, League of Minnesota Cities, Shoreview, for amicus curiae.

Considered and decided by AMUNDSON, P.J., and CRIPPEN and DAVIES, JJ.

## OPINION

DAVIES, Judge.

Property owners in quiet title action challenge decision ordering them to cease exercise of their riparian rights. We reverse.

## FACTS

Appellants Patrick and Brenda McLafferty and Frederick and Lois Gelbmann ("the property owners") own property abutting Lake Wabasso in Shoreview. Their property and other private property along the lake is subject to a street easement that runs along the shore of Lake Wabasso. The city has never improved or maintained the avenue (Wabasso Avenue) despite its dedication to public use a century ago.

The property owners have maintained docks on the lake since the 1940s. And for at least 20 years, the property owners, and a number of their neighbors, have mowed the grass within the easement, planted trees and shrubbery, and maintained the shoreline of the lake so it would be suitable for their recreational use. They have also removed lake vegetation and sometimes added fill and constructed small beaches.

Some members of the public currently use the easement for walking and for access to an adjacent county park. In the past, the public has used the easement to camp, swim, boat, and walk. Until the 1960s, the public used the area to trap, fish, and frog-hunt.

In 1986, the property owners petitioned the city to vacate the avenue. After a study committee appointed by the city concluded that the shoreline included in the avenue should be allowed to return to its natural state, the city denied the petition for vacation and ordered the property owners to remove their docks from the shore and riparian waters.[1]

The property owners refused to remove the docks and brought a quiet title action to clarify their rights. The trial court found that both the city and the property owners hold riparian rights, but that the city's riparian rights are paramount. The court also found the property owners' docks, beaches, and removal of vegetation to be incompatible with the city's exercise of its riparian rights. The court ordered the property owners to refrain from any actions that would interfere with the public's right of access to the lake, to remove the existing docks and man-made beaches, and to refrain from any further exercise of any rights other than those granted them as members of the general public. The court also ordered the property owners to refrain in the future from interfering with the city's riparian rights, including the city's right to construct docks or beaches or to allow the shoreline to return to its natural state.

## ISSUES

I. Does the dedicated street easement bordering Lake Wabasso confer exclusive riparian rights on the city?

II. Is the city's current exercise of its riparian rights sufficient to require the property owners to remove lakeshore improvements?

---

1. The city had earlier formulated a plan to construct a recreational trail on the easement, but it does not intend to implement that plan until at least 1995.

## ANALYSIS

### I.

The trial court first ruled that the riparian rights appurtenant to the street easement are exclusive and that the property owners have no rights other than those granted them as members of the general public.

■ Under Minnesota law, however, the owner of an easement and the owners of the underlying fee share the riparian rights. In *Brisbine v. St. Paul & Sioux City R.R.*, 23 Minn. 114 (1876), the supreme court determined that the riparian rights appurtenant to a strip of property extending from the middle of a dedicated street easement to the shore of the Mississippi belonged to the fee owner of the property. *Id.* at 129–130. Because the fee owner held riparian rights, the city did not hold exclusive riparian rights, although it owned the street easement bordering the river.

In *Hanford v. St. Paul & Duluth R.R.*, 43 Minn. 104, 42 N.W. 596 (1890), the court distinguished from *Brisbine* a situation where a railroad had acquired the *exclusive* right to occupy and use land to which riparian rights attached. *Id.* at 110, 42 N.W. at 597–98. In that case, the railroad's right of occupancy carried with it exclusive riparian rights. *Id.* at 109, 42 N.W. at 597. In *Brisbine*, in contrast,

> [t]he public right of use was not exclusive so as to cut off the [fee owner's] communication between the land and the water, and he could therefore use and enjoy the riparian rights.

*Id.* at 110, 42 N.W. at 598.

The *Brisbine* principle also applied in *Wait v. May*, 48 Minn. 453, 51 N.W. 471 (1892). There, the court specifically indicated that riparian rights were held by a fee owner who held property extending to a lakeshore and subject to a street easement bordering the lake. *Id.* at 461–62, 51 N.W. at 473.

■ Authority outside Minnesota supports the conclusion that the city does not hold exclusive riparian rights. *See Marshall v. Hartman*, 104 Fla. 143, 139 So. 441, 445 (1932); *Johnson v. Grenell*, 188 N.Y. 407, 81 N.E. 161, 161 (Ct.App.1907). At least one case holds that in this situation, a street easement carries with it *no* riparian rights. *Tolchester Beach Improvement Co. v. Boyd*, 161 Md. 269, 156 A. 795, 798 (Ct.App.1931). Further, a treatise on the subject asserts that riparian rights depend on the owner's property touching the water. Thus,

> to have the effect of destroying the [riparian] rights of the abutting owner, the *fee* of a highway [bordering a navigable water] must be in the public.

1 Henry P. Farnham, *Waters and Water Rights* § 144 (1904) (emphasis added).

The city contends that Minnesota cases decided after *Wait* recognize exclusive riparian rights in the easement holder. But the cases the city cites all involve fact patterns different from this case and do not address the issue here. For example, in *Village of Wayzata v. Great N. Ry. Co.*, 50 Minn. 438, 52 N.W. 913 (1892), while determining that a street easement bordering a lake conferred riparian rights on the public, the court did not consider, or even mention, the rights of the fee owner of the street. The issue in that case involved the railroad's responsibility to facilitate public access to the water, given the existence of public riparian rights. *See id.*, 50 Minn. at 443–44, 52 N.W. at 914.

In other cases, the issue was the ownership of riparian rights when a street provides ingress and egress to a body of water, a concern different from that in bordering street easement cases. *See Flynn v. Beisel*, 257 Minn. 531, 537–39, 102 N.W.2d 284, 289–90 (1960); *Troska v. Brecht*, 140 Minn. 233, 238–39, 167 N.W. 1042, 1044 (1918). An ingress/egress easement (perpendicular to the shore) ordinarily does not have the potential to deprive a fee owner of all riparian rights because the fee owner owns adjoining property abutting the lake and providing separate riparian rights. Further, none of these cases have determined that the riparian rights incidental to a municipality's easement are exclusive. *See Flynn*, 257 Minn. at 539, 102 N.W.2d at 293 (township had riparian rights to be enjoyed in common with the fee owners of

the property); *Troska,* 140 Minn. at 237–38, 167 N.W. at 1044 (holding that persons "other than fee owners may possess riparian rights").

The city, therefore, under the *Brisbine* line of cases, does not have exclusive riparian rights here and cannot order the fee owners to remove their docks on the basis of exclusivity.

## II.

The trial court ruled that, if the riparian rights in the property are shared, the city's rights are paramount and include the right to influence the character of the shoreline. Thus, the court ordered the property owners to remove any improvements made to the lakeshore. The court decided this was a valid exercise of the city's riparian rights, to which the property owners' secondary rights must yield.

■ Riparian rights are generally described as the rights *to use and enjoy* the profits and advantages of the water. *See* 78 Am.Jur.2d *Waters* § 263 (1975). The riparian owner

> has a right to make such use of the lake over its entire surface, in common with all other abutting owners, provided such use is reasonable and does not unduly interfere with the exercise of similar rights on the part of other abutting owners.

*Johnson v. Seifert,* 257 Minn. 159, 169, 100 N.W.2d 689, 697 (1960).

Riparian rights include the right to build and maintain, for private or public use, wharves, piers, and landings on the riparian land and extending into the water. *State v. Korrer,* 127 Minn. 60, 71–72, 148 N.W. 617, 622 (1914). They also include such rights as hunting, fishing, boating, sailing, irrigating, and growing and harvesting wild rice. *In re Application of Central Baptist Theological Seminary,* 370 N.W.2d 642, 646 (Minn.App.1985), *pet. for rev. denied* (Minn. Sept. 19, 1985).

■ The city has not established that it is presently exercising its riparian rights. Riparian rights are generally positive rights, fostering use of the water for navi-

gation, recreation, or harvest. At this point, the city does not intend to build a beach, a public dock, or make any other use of the shoreline that will accommodate public access to or use of the lake. Thus, the city is attempting to impede the property owner's exercise of traditional riparian rights, but not by purposeful use of its own valid riparian rights. Under these circumstances, the property owner's lakeshore improvements do not unreasonably interfere with the city's exercise of riparian rights, although the improvements may frustrate some nascent thoughts of zoning.

If, in the future, the city decides to exercise its riparian rights purposefully, the property owners may be required to yield. At this point, however, the property owners may maintain their docks and other improvements without burdening the city.

■ The trial court found that the property owners' docks and other improvements gave the impression that Wabasso Avenue was private property and thus had a "chilling" effect on the public's exercise of the city's riparian rights. Even if this is true, the "chilling effect" does not rise to the level of an impermissible interference because the city is not actively asserting any particular riparian right for the public's benefit and the property owners' use of the avenue and shoreline does not unduly burden the present passive use by the public. *See Johnson,* 257 Minn. at 169, 100 N.W.2d at 697.

Moreover, the city may be equally responsible for deterring the public from exercising the city's riparian rights. The avenue does not appear to be marked as a street or even as public property. If the property owners removed their docks and did not mow the grass, the public would probably still continue to view the avenue as "private" property, unless the city took some step to identify it as a public way.

## DECISION

The city and the property owners share the riparian rights appurtenant to the strip of property bordering the lake. The city's current exercise of riparian rights is insuf-

ficient to require the property owners to cease exercise of their own riparian rights by removing lakeshore improvements.

**Reversed.**