GILBERT E. PALEN, PLAINTIFF IN ERROR, v. OCEAN CITY, DEFENDANT IN ERROR.

Argued March 16 and 19, 1900—Decided June 18, 1900.

The mere delineation on a filed map, by which conveyances are made, of a wharf extending into navigable waters at the end of a public street, does not conclusively indicate a dedication of a wharf to public use.

---

On error to Supreme Court. This cause was tried at the December Term, 1899, of the Cape May Circuit, before Mr. Justice Ludlow and a jury, and a judgment of nonsuit ordered.

For the plaintiff in error, *David J. Pancoast.*

For the defendant in error, *Lindley M. Garrison.*

The opinion of the court was delivered by

COLLINS, J.   The plaintiff, in an action of ejectment, was nonsuited at the Circuit because the trial judge was of opinion that he had established no case for a jury.   This writ of error is based on his bill of exception to the nonsuit.   The premises in dispute are thus described in the plaintiff's declaration : "All that certain tract of land and wharf at Ocean City, Cape May county, New Jersey, with the appurtenances, situated at the bay-side end of Fourth street, being sixty feet in front on the northwesterly side of Bay avenue and extending northwesterly, one hundred and fifty feet, more or less, between lines sixty feet in width, more or less, in line with the line of Fourth street extended northwesterly."   The plaintiff averred that his right to possession accrued July 2d, 1886.   The plea filed was the statutory one of not guilty.

The evidence showed a good paper-title and possession in 1880 in the Ocean City Association, a body corporate, of a large tract of land in the county of Cape May, lying between the Atlantic ocean and an interior bay, or "beach thoroughfare."   In 1880 this association constructed a road leading to the bay, and at the end of this road constructed a wharf. Later in the same year a part of the property lying considerably back from the bay was laid out into blocks and lots, and a map was filed by the association with the county clerk. Fourth street alone extended across the unplotted land towards the bay.   This street was coincident in its side-lines with the road above mentioned.   The situation at the water front is left incomplete on the map, but at one side is printed the word "wharf," indicating that a wharf existed or was contemplated at the end of the road.

In 1883 a more complete layout was made and a new map was filed.   On it a street called Bay avenue is shown running along, but a little way back from, the water front.   The cross streets end at the southeasterly side of this avenue, but across it, and in continuation of Fourth street, there is shown a projection over the foreshore, beyond a dotted line proved to be

high-water mark, which projection is marked "wharf" in large letters extending up to the avenue. .

In 1886, the association conveyed to the plaintiff, by metes and bounds, a tract of land three hundred and sixty feet long, the southeasterly line of which was the northwesterly line of Bay avenue, and the northwesterly line of which was high-water mark in the thoroughfare, adding these words, "containing all within said bounds, including all the old wharf site so called at the foot of Fourth street;" and under this deed the plaintiff took possession of the wharf.

By an act approved March 25th, 1897 (*Pamph. L., p.* 107), the defendant was incorporated as a city under the general act of that year (*Pamph. L.* 1897, *p.* 46), and, subsequently, took exclusive possession of the wharf and, despite notice and warning from the plaintiff, extended it farther into the bay. On April 19th, 1898, the defendant passed an ordinance exacting toll from the public for the use of the wharf. Hence the ejectment.

It is contended in support of the nonsuit that if the plaintiff has any title to the wharf, such title does not extend beyond high-water mark, because his deed is so limited. I think the fair construction of the language used in the deed includes all of the wharf; but, if not, the only result of such defect of title would be to limit the extent of recovery, not to defeat the action. The same may be said of the defendant's claim that the plaintiff shows no right to the extension of the wharf made by the defendant, although as to that there seems little doubt that under the circumstances such extension enures to the owner of the wharf as originally constructed.

The main contention of defendant is that the wharf was dedicated to public use by the Ocean City Association. Dedication is always a question of intention and is a jury question, unless the intention is too plain to admit of dispute. As to streets, parks and public places the filing of a map, on which they are named as such, or their character plainly indicated, and the making of conveyances by reference to such map, will operate conclusively as a dedication. *Price*

v. *Plainfield*, 11 *Vroom* 608 ; *Weger* v. *Delran*, 32 *Id.* 224. The defendant seeks to bring this case within that doctrine. The map of 1883 certainly shows a wharf in fact and in name, and the question, therefore, is whether thereby there arose a dedication to public use. We have been referred to no decision that the mere portrayal on a map of a wharf, whether existent or projected, shows an intention to dedicate the wharf to public use. A wharf is very different from a highway or a park. In *O'Neill* v. *Annett*, 3 *Dutcher* 290, 295, Chief Justice Green asserts that the principle of dedication of highways and public squares does not extend to public landings, and it is plain that he was right. A landing may be public in the sense that it is open to all comers, but wharfage is demandable by *some one*, and in order to conclusively indicate that the public is to have a proprietary right, something more than calling the structure a wharf is essential. It is a wharf whether in public or private control, and its delineation and name on a map have no effect whatever in determining its character. This must be conceded and it is probably only because the wharf is shown on the map of 1883, and is referred to in the plaintiff's own deed, as at the foot of a public street that the claim of dedication is made. The real contention is that Fourth street was laid to the water and that the wharf is a mere extension thereof. This is inconsistent with defendant's ordinance, but at present we are not concerned with that. If the land sued for was dedicated to the public use, the defendant, as the municipal corporation now controlling the territory, can maintain possession. It could have sustained ejectment although its creation was subsequent to the dedication, and although its organic law gives it no express authority over wharves. *Hoboken Land and Improvement Co.* v. *Hoboken*, 7 *Vroom* 540 ; *Price* v. *Plainfield*, *ubi supra* ; *Weger* v. *Delran*, *ubi supra*. But I can find no conclusive evidence that Fourth street was laid to the water. The map of 1880 is too incomplete to be evidential. It only indicates that the street led to a wharf, the exact location of which is not shown. The map of 1883 seems to

end the street at Bay avenue. All other cross streets do so end and the projection north of the avenue in continuation of Fourth street seems, in the mind of the draughtsman, to form part of the wharf. The evidence is that both road and wharf in the original construction had to be filled in and it is not inconsistent with the nature of a wharf that it should begin above ordinary high-water mark. It must do so where the bank slopes.

The rule of property, upheld in this state, that except as against the title of the state (*Elizabeth* v. *Central Railroad Co.*, 24 *Vroom* 491, and cases cited), streets or roads laid to the high-water line of navigable waters, will be continued over land reclaimed artificially, has no application to the case in hand; for the wharf antedated the road, and the most that can be claimed is that the road ran to the wharf, and this brings us back to the jury-question of whether the wharf was or was not dedicated to public use. We will not prejudge this issue of fact; but it is clear that such user by the public as incidentally appears in the plaintiff's proof did not of itself establish dedication. *O'Neill* v. *Annett, ubi supra; Bacon* v. *Mulford*, 12 *Vroom* 59, 65.

It is lastly urged by the defendant that, as in ejectment, a plaintiff must recover on the strength of his own title, and not on the weakness of that of his adversary, the nonsuit was right because the title of the land on which the wharf stands is not in the plaintiff, but in the State of New Jersey. This contention ignores the local usage declared in *Gough* v. *Bell*, 2 *Zab.* 441, and upheld in this court in *Stevens* v. *Paterson and Newark Railroad Co.*, 5 *Vroom* 532, that the shore owner has a license, irrevocable after execution, to build wharves, or reclaim, in front of his lands down to low-water mark. This right is confirmed by the Wharf act of 1851. *Gen. Stat., p.* 3753. A wharf so built becomes private property. To go below low-water mark, a license from the chosen freeholders is necessary, and none was proved in this case; but neither the line of high nor low water in 1880 was proved. The surveyor who made the map of that year testified that no

definite location was intended. As to the map of 1883, the only proof is that the dotted line was intended to indicate high-water mark. Of course, as the wharf is not *all* beyond low-water mark, there could not properly be a nonsuit; but we are of the opinion that if the plaintiff shows title to the body of the wharf, it is not open to the defendant to resist its regaining possession of the whole on the ground that part is a purpresture.

The judgment must be reversed and a *venire de novo* be awarded.

*For affirmance*—None.

*For reversal* — MAGIE (CHANCELLOR), VAN SYCKEL, GARRISON, LIPPINCOTT, GUMMERE, COLLINS, BOGERT, HENDRICKSON, ADAMS, VREDENBURGH, VOORHEES. 11.