ELIZABETH PALEN ET AL. v. OCEAN CITY.

Argued November Term, 1904—Decided January 26, 1906.

1. Whether or not the effect of a municipal ordinance is to discharge a public easement is not a question of fact, to be left to the jury for decision, but a question of law, to be determined by the court.
2. When a wharf has been dedicated to public use the local authorities, as the representatives of the public, are clothed with power to do all acts necessary for the protection of the public right; but the legislature alone has the power to release the dedicated land and discharge the public servitude when it has once attached.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and GARRETSON.

For the rule, *Godfrey & Godfrey.*

*Contra, John W. Wescott* and *Keator & Johnson* (of the Philadelphia bar).

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This is an action of ejectment. The *locus in quo* is a wharf at the foot of Fourth street, in the city of Ocean City, a seaside resort on the Atlantic coast. It appeared from the testimony in the case that in the year 1880 the Ocean City Association, having acquired title to a large tract of land in Cape May county bordering on one of the "thoroughfares" separating the mainland from the Atlantic ocean, caused it to be plotted into streets and lots, and a map thereof made and filed in the county clerk's office. Upon this map, at the point where the street designated thereon as Fourth street terminates, at the water's edge, a wharf is delineated. In 1883 the association caused another map of this property to be prepared and filed, and upon this map, also, the wharf at the foot of Fourth street is shown. Many lots of land were sold by these maps to purchasers, and a settlement of considerable size gradually grew up at this place. As early as 1884 the settlement became incorporated as a borough, and the present city is its successor. In 1886 the Ocean City Association conveyed to Dr. Palen a tract of land, which, in terms, included the wharf situated at the foot of Fourth street. It appeared from the evidence submitted that early in the development of this tract of land a wharf had been constructed at the foot of Fourth street; that it had subsequently been repaired or restored by public subscription, and consequeently by the borough or city of Ocean City, and that it had been used, to some extent, at

least, by the public. It further appeared that the defendant municipality, in April, 1898, passed an ordinance entitled "An ordinance establishing the rate of wharfage and providing for the collection thereof, for Fourth street wharf, in Ocean City, New Jersey," by the provisions of which the office of wharfmaster was created, and the encumbent charged with the duty of seeing that vessels should not unnecessarily injure the wharf, and, in case of damage thereto, of causing the same to be repaired in the name of Ocean City, and of collecting from the owner of the vessel the amount of damage done thereto. The ordinance also fixed the charges to be paid by owners or captains discharging or taking on cargo at the wharf and imposed upon the wharfmaster the duty of their collection. At the close of the case the trial judge left it to the jury to find (1) whether there had been a dedication of the wharf to the public use; and (2) in case they found there had been such dedication, then whether the defendant municipality, by passing the ordinance of April, 1898, had terminated the public user of the wharf, and instructed them that if they found that the effect of this ordinance was to put an end to the public user, then the property at once reverted to the plaintiffs, who were devisees under Dr. Palen's will. A verdict for the plaintiffs having been rendered, the defendant applied for and obtained a rule to show cause why it should not be set aside for errors occurring at the trial.

The rule to show cause should be made absolute.

The question whether there had been a dedication of the wharf was properly left to the jury to determine. *Palen* v. *Ocean City,* 35 *Vroom* 669. Assuming that there was such dedication, the question whether the ordinance of April, 1898, operated as an abandonment of the public user was not one of fact, to be determined by the jury, but one of law, to be determined by the court. Whether the jury concluded from the evidence that no dedication of this wharf to the public use had been shown, or whether they concluded that there had been a dedication, but that there had been an abandonment of

the public use by the ordinance referred to, cannot be determined from their verdict. Inasmuch as a new trial of the case must be had for this reason, we deem it proper to point out what seems to us to be the true determination of the latter question. In the first place, there is nothing in the language of the ordinance which suggests an intention on the part of the municipal authorities to abandon the public user; its purpose is to regulate the use of the wharf, and, apparently, to provide a fund for its maintenance and repair. But if the ordinance admitted of the opposite construction, the conclusive answer is that no power is vested in the municipal authorities to discharge the public right; the easement is vested in the public, and the local authorities, as the representatives of the public, are clothed with power to do all acts necessary for the protection of the public right; but the legislature alone has the power to release the dedicated land and discharge the public servitude when it has once attached. No such power exists in a municipality unless it has been delegated to it by legislative enactment. *Hoboken Land and Improvement Co.* v. *Mayor, &c., of Hoboken,* 7 *Vroom* 549. Counsel for the plaintiffs do not deny that this is the settled rule, but contend that such authority is found in section 48, paragraph 1 of "An act relating to and providing for the government of cities in this state containing a population of less than twelve thousand inhabitants," approved March 24th, 1897 (*Pamph. L., p.* 46), the statute under which the defendant municipality is organized. The provision appealed to authorized the common council, "whenever in their opinion the public good requires it, by ordinance, to cause any street, road, highway or alley already laid out, to be vacated," and it is argued that the term "highway" includes a wharf, within the intent and meaning of this provision. We are unable to reach this conclusion. The legislature, by section 18, paragraph 7 of the act, clothed the common council with power to regulate streets, highways, public places, bridges, wharves and docks. The language of this paragraph makes it apparent, as it seems to us, that the legislature, in enacting this statute for the government of cities of the class named

in the title of the act, considered that a wharf was a thing distinct and apart from a highway, and did not intend that the subsequent provision authorizing the vacation of highways should clothe the municipality with power, also, to vacate other public places, bridges, wharves or docks.

The rule to show cause will be made absolute.