## CHARLES A. BETCHER v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

February 25, 1910.

Nos. 16,325—(124).

**Dedication of Levee in Town Plat — Fee Title — Vacation of Easement.**

Action to recover possession of a tract of land, which, as the defendant claimed, was a part of a public steamboat landing or levee in the city of Red Wing. Findings of fact for the defendant. *Held:*

1. The tract was dedicated to the use of the public primarily as a steamboat landing or levee. An ordinance of the city purporting to vacate the levee is void, because the city council had no authority to enact it. Legislative authority to such council to alter or abolish streets, avenues, lanes, and alleys does not include the power to extinguish the public easement in a levee.

[1] Reported in 124 N. W. 1096.

2. The fee title to lands dedicated by a town plat, pursuant to R. S. 1851, c. 31, § 5, for streets or public grounds, does not pass to the municipality or corporate authorities, but remains in the dedicator and his grantees, subject to the public easement therein.

3. If a deed bounds the land upon a street or highway, title passes to the center thereof, if there be nothing in the deed, or the location of the land, or the relation of the parties showing a different intention; but where a deed expressly makes the nearer external line of the highway or street (as in this case the southerly line thereof) the boundary line of the tract conveyed, and no other language is used indicating a contrary intention, no title to the street passes to the grantee.

4. The evidence shows that the plaintiff has title in fee to the land here in question, subject to the public easement.

Action in the district court for Goodhue county to recover possession of certain land and for $1,080 damages for withholding possession thereof. The answer denied plaintiff's title, admitted that defendant was in possession of the premises with the acquiescence of the owner, that no compensation had been made to plaintiff, and alleged that, if plaintiff's right to recover the land be established, defendant was ready to have the amount of such compensation assessed by the jury trying the case. The case was tried before Crosby, J., who found for defendant. From an order denying plaintiff's motion for a new trial, he appealed. Reversed and new trial granted.

*Mohn & Mohn,* for appellant.

*F. W. Root* and *F. M. Wilson,* for respondent.

START, C. J.

This action was brought in the district court of the county of Goodhue to recover possession of the premises described in the complaint herein, being a tract of land lying between the northerly line of lots 6 and 11, block 41, of the original plat of the town (now city) of Red Wing and the Mississippi river. This tract was, as the plaintiff claims, a part of Levee street, as originally laid out; but, as the defendant claims, it was a part of a public levee or steamboat landing of the city  The complaint alleged that the plaintiff is the owner of and entitled to the possession of the tract, but that the defendant

withholds the possession thereof from him. The answer, so far as here material, was a denial of the plaintiff's title and admission that the defendant was in the possession of the premises for railroad purposes with the acquiescence of the owner thereof.

The cause was tried by the court without a jury. The facts found by the court were substantially these: The land described in the complaint is a part of a tract that was duly dedicated to the public use as a steamboat landing or levee, which was duly accepted as such by the public. Such dedication has not been vacated, and ever since has been and now is in full force and effect; that the plaintiff is not the owner and is not entitled to the possession thereof. As a conclusion of law, judgment was directed for the defendant, and the plaintiff appealed from an order denying his motion for a new trial.

The controlling question raised by the assignments of error is whether the finding that the plaintiff was not the owner of the land in question is sustained by the evidence; that is, whether the evidence was such as to require a finding that the plaintiff was the owner, either by record title thereto or by adverse possession thereof. The question whether the tract was a part of a public steamboat landing or levee, or exclusively a part of a public street, which has been vacated, is not decisive of the question; for it was unquestioned that the tract was at one time subject to a public easement, either for a street or levee, or both. In any event, whether the tract was originally a part of a street, or of a levee, or whether the public easement has or has not been extinguished, the plaintiff cannot recover in this action, unless he is the owner of the tract, either with or without the public easement therein. On the other hand, if he be such owner, he is entitled to maintain this action as against the defendant, who showed no right to the tract, whether the easement has or has not been extinguished. Wait v. May, 48 Minn. 453, 51 N. W. 471; Sanborn v. Van Duyne, 90 Minn. 215, 96 N. W. 41.

The tract in question is a part of an irregular parcel of land, ninety feet wide at its easterly end and two hundred seventy feet wide at its westerly end where it meets or unites with Levee street. This irregular tract lies between the northerly line of blocks 41, 42,

43, and the river, and is marked on the plat "Steamboat Landing." Upon a consideration of the plat, and all other evidence relevant to the question, we are of the opinion that the irregular tract was dedicated to the use of the public primarily as a steamboat landing or levee. On the town plat the land in question is designated as a "Steamboat Landing." Hurley v. Mississippi & R. R. Boom Co., 34 Minn. 143, 24 N. W. 917.

In June, 1865, the city council of Red Wing passed an ordinance in which it treated the tract here in question as a part of Levee street, and declared it vacated and attached to the adjoining lots 6 and 11, subject to the condition that the owners of the lots should keep open a road track for public use over the vacated portion. On July 13, 1894, the council passed an ordinance which recited the condition of the prior ordinance and a failure to comply therewith, and for such reason the ordinance purported to repeal the prior ordinance. The power of the council to enact the original ordinance, if any it had, must be found in the charter of the city of Red Wing (Sp. Laws 1864, c. 6, subc. 4, § 2, subd. 26), which reads as follows: "To alter, abolish, open, widen, extend, establish, grade, repair, or otherwise improve or keep in repair streets, avenues, lanes, and alleys." Does this charter provision include a grant by the legislature of the power to the city council to abolish or extinguish the right of the public in a steamboat landing or levee?

While a public levee has many of the characteristics and incidents of a public street, yet in many essential respects it is distinct from a street. It was held in the case of Palen v. Ocean City, 72 N. J. L. 15, 62 Atl. 947, that legislative authority to the city council "by ordinance, to cause any street, road, highway, or alley already laid out to be vacated," did not authorize the council to vacate the public wharf. In 1864, when the charter provision here under consideration was enacted, public levees were and still are of prime importance to towns and cities located upon the Mississippi river; hence the reasons are obvious why the power to extinguish the rights of the public in levees should not be delegated to city councils. If it had been the intention of the legislature to grant such power to

the city council of Red Wing, it is fair to presume that so important and radical a matter would not have been left to be inferred, but that levees would have been included in the enumeration of public easements the council might destroy. The fact of such enumeration excludes any implication that public levees were intended to be included therein. City of Red Wing v. Chicago, M. & St. P. Ry. Co., 72 Minn. 240, 75 N. W. 223, 71 Am. St. 482. We are of the opinion that the city council had no authority to vacate the levee, and that the ordinance purporting so to do is void.

This brings us to a consideration of the main question, whether the undisputed evidence shows that the plaintiff is the owner of the tract of land here in question, subject to the public easement.

The original source of plaintiff's record title is a patent of the land, covered by the original plat, issued May 20, 1858, under United States Town Site Act May 23, 1844, c. 17, 5 St. 657, to the then chief justice of the territory of Minnesota, William H. Welch, who entered the land March 25, 1856, in trust for the benefit of the occupants thereof according to their respective interests therein. On July 18, 1856, Judge Welch conveyed a part of lots 6 and 7, of block 41, to John T. Hancock, by deed duly executed and recorded, in which it was recited that the grantor held the parcel of land therein described in trust for the grantee, who owned and was entitled to a deed of the title in fee thereto. Then followed a description of the tract conveyed in these words: "*  *  *  Part of lots six (6) and seven (7), in block forty-one (41), commencing at the northeasterly corner of said lot six (6), and running thence southerly along the easterly line of said lot six (6) forty-two (42) feet; thence westerly and parallel with Levee street ninety (90) feet; thence northerly and parallel with the easterly line aforesaid forty-two (42) feet to Levee street; thence easterly along the line of said street ninety (90) feet to point of commencement.  *  *  *" Prior to the making of this deed, and on June 6, 1856, Judge Welch conveyed all of lots 6 and 7 lying south of the part thereof described in the deed of July 18, 1856, to Hancock, by a similar deed containing like recitals.

Reading the two deeds together, it appears that Hancock was the actual owner of the whole of lot 6, but the legal title thereto was held by Judge Welch in trust for Hancock, and that the deeds were made simply for the purpose of vesting such legal title in him in execution of the trust.   It appears from the evidence and admissions of record that plaintiff by mesne conveyances acquired all the interest, right, and title in and to lot 6 which Hancock ever had therein. Thereafter, and on October 3, 1902, the plaintiff by deed duly executed and recorded conveyed to the Red Wing Mills a part of lots 6, 7, and 11, block 41, which was therein described as follows: "All that part of lots numbered six (6), seven (7), and eleven (11), in block numbered forty-one (41), in Red Wing, according to the plat thereof in the office of the register of deeds of said county, bounded and described as follows, to wit:

"Beginning at a point where the line between said lots six (6) and eleven (11) intersects the northerly line of La Grange street; running thence south forty and one-half degrees west (S. 40½° W.) along said line of said La Grange street ninety (90) feet; thence north forty-eight and one-half degrees west (N. 48½° W.) and along the north and south middle line of said lot seven (7) one hundred and forty-two (142) feet and to the southerly line of the steamboat landing or levee, or Levee street as it is sometimes designated; thence north forty and one-half degrees east (N. 40½° E.) and along said southerly line of said steamboat landing or levee, or Levee street aforesaid, to the southwesterly line of lands sold and conveyed by said grantors herein to the city of Red Wing by deed of quitclaim dated December 5, A. D. 1895, and recorded in the office of the said register of deeds on December 16, A. D. 1895, in Book X4, on page 236, to which record reference is hereby made as a part hereof; thence south forty and one-half degrees east (S. 40½° E.) along said line of said lands in said deed described to a point on the said line between said lots six (6) and eleven (11) eighty-nine (89) feet northerly from the aforesaid point of beginning; and thence southerly and along said line between said lots eighty-nine (89) feet to the said point of beginning first aforesaid."

The conveyances to which we have referred show that the plaintiff is the owner of the fee title to that part of the land here in question, which lies between lot 6 and the river.

It is urged by counsel for defendant that it does not for the reason that under the provisions of R. S. 1851, c. 31, § 5, relating to town plats, which was in force when the town plat in this case was made, the title in fee simple to the steamboat landing or levee, shown on the town plat, vested in the municipality, holding the same in trust for the public. This statute, without substantial change of language, has been in force in this state ever since the organization of the territory of Minnesota. It was originally a statute of the territory of Wisconsin, and became a part of the statutory law of the territory of Minnesota by virtue of section 12 of the organic act of Minnesota, approved March 3, 1849. It has been the uniform holding of this court that the dedication of land, pursuant to this statute, to the public for streets, alleys, and public grounds, does not pass the fee-simple title thereto, but only such an estate as the purpose of the trust requires, and that the fee, subject to the public easement, remains in the dedicator and his grantees. Schurmeier v. St. Paul & Pac. R. Co., 10 Minn. 59 (82), 88 Am. Dec. 59; City of Winona v. Huff, 11 Minn. 75 (119); Village of Mankato v. Willard, 13 Minn. 1 (13), 97 Am. Dec. 208; Brisbane v. St. Paul & S. C. R. Co., 23 Minn. 114; Wait v. May, 48 Minn. 453, 51 N. W. 471. It follows that the fee to the tract in question never was in the municipality, but remained in the owner of the lots abutting thereon, subject to the public easement.

The next question to be considered is whether by the deed from Judge Welch to Hancock of the northerly forty two feet of lot 6 it was the intention to convey any interest in the steamboat landing or levee.

Whether such deed vested the fee title in Hancock to the part of the levee in front of lot 6, subject to the public easement, depends on the intention of the parties thereto. If the description in the deed had been the northerly 42 feet in width of lot 6, block 41, according to the town plat, the presumption would be that it was the

intention to convey the fee to the levee in front of it. The deed, however, described the premises by metes and bounds and the question is whether such description and the circumstances under which the deed was made negative any intention to convey the grantor's title in the levee. Clearly they do not, for the grantee, Hancock, was the actual and beneficial owner of the lot before the deed was made. The grantor Judge Welch had no beneficial interest therein, but held the naked legal title in trust for Hancock. It was the judge's official duty to convey the whole legal title to the lot to the real owner thereof, Hancock. The purpose of the deed, as therein declared, was the execution of such trust and duty. In view of the relation of the parties to each other, their respective rights in and to the lot, and the purpose for which the deed was executed, there was no reason why Judge Welch should retain the naked legal title to the fee in the levee, leaving the beneficial or equitable interest therein in Hancock. Nor is there anything in the description in the deed that indicates an intention to exclude the fee title to the levee from the operation of the deed, for the part of the lot conveyed is bounded by the levee, and the case falls within the general rule that, if a deed bounds the land upon a street or highway, title passes to the center thereof; if there be nothing in the deed or in the location of the land or relation of the parties showing a different intention. It follows that the deed of Judge Welch to Hancock vested the legal title to the levee subject to the public easement, in Hancock.

It is claimed on behalf of defendant that, if the fee title to the levee passed by the deed, it follows that such title in the levee passed to the Red Wing Mills by plaintiff's deed to it, for the alleged reason that the language of the grant in this respect is, in legal effect, identical in each case. We have set out the description of the premises conveyed by each deed for the purpose of comparison. It will be observed that in the first deed the northerly boundary of the tract conveyed was along the line of the street or levee; that is, it was bounded upon the street or levee, and the general rule we have stated applies to the description. In the second deed the northerly boundary line of the tract conveyed is the southerly line of the levee. The

difference in the two grants in this respect is obvious and fundamental for the description in the first deed contains nothing to indicate any intention to exclude the levee from the grant, and hence the general rule applies; but the description in the second deed clearly indicates an intention to exclude the levee from the grant. The rule is well settled that, where a deed of land abutting upon a street or highway expressly makes the nearer external line thereof (as in this case the southerly line) the boundary line of the tract conveyed, and no other language is used indicating a contrary intention no title to the street passes to the grantee. Grand Rapids v. Heisel, 38 Mich. 62, 31 Am. Rep. 306; Severy v. Central, 51 Cal. 194; McKenzie v. Gleason, 184 Mass. 452, 69 N. E. 1076, 100 Am. St. 566; Morrow v. Willard, 30 Vt. 118, 120; Trowbridge v. Ehrich, 191 N. Y. 361, 84 N. E. 297; Hunt v. Brown, 75 Md. 481, 23 Atl. 1029.

We hold that plaintiff's title to the levee, subject to the public easement, did not pass to his grantee, the Red Wing Mills, by his deed referred to, but that it was expressly excluded therefrom. The evidence of the plaintiff's record title to that part of the tract here in controversy lying between lot 11, block 41, and the river, is to the effect that Judge Welch, who held the legal title in trust for the actual owner thereof, William Freeborn, conveyed it to him, describing it in his deed as lot 11, in block 41, in the town of Red Wing, according to the plat thereof, and that the plaintiff, through mesne conveyances, acquired title in fee to the lot, subject to the public easement therein.

Our conclusion, based upon the evidence and admissions as shown by the record herein, is that the plaintiff showed record title in himself to the tract of land here in question, lying between lots 6 and 11, in block 41, and the river, subject to the public easement therein, and that the finding of the trial court that he was not the owner thereof is not sustained by the evidence.

Order reversed, and new trial granted.