MARTIN A. RYERSON, Appellant, vs. THE CITY OF CHICAGO
et al. Appellees.

*Opinion filed October 28, 1910—Rehearing denied Dec. 13, 1910.*

1. PLATS—*plat did not, at common law, convey fee of streets.*
At common law a plat did not convey the fee of the streets, and
it can have effect as such conveyance only by virtue of some stat-
ute; and where such a statute exists it must be strictly complied
with, otherwise the plat has the effect of a common law dedication
creating an easement, only, in the streets and leaving the fee
thereof in the proprietor.

2. SAME—*difference between statutory dedication and common
law dedication.* The difference between a statutory dedication and
a common law dedication is, that the former vests the legal title
to the grounds set apart for public purposes in the municipal corpo-
ration, while the latter leaves the legal title in the original owner.

3. SAME—*effect of deed to a lot abutting on streets shown on
common law plat.* Where the legal title to the streets shown on a
plat remains in the proprietor because of a failure to comply with
the statute concerning plats, his deed to any lot abutting upon such
streets will, unless restricted in some way, convey the legal title to
the center of the street upon which the lot conveyed abuts.

4. SAME—*plat of Fractional Section 15 addition to Chicago is
a common law plat.* By reason of the failure of the canal com-
missioners to comply with the statute concerning plats in platting
Fractional Section 15 addition to the city of Chicago, in 1836, such
plat is not a statutory one, and if it had been made by a private
person would have had the effect of a common law dedication,
only, and the legal title to the streets would have remained in the
proprietors unaffected by the plat though subject to the public ease-
ment in the streets.

5. SAME—*title of abutting owners in Fractional Section 15 ad-
dition to Chicago is limited to the lot lines.* The doctrine that a
conveyance by the State of a lot bounded by a street in territory
platted by the canal commissioners carries title to the lot line, only,
has become a rule of property which cannot now be disregarded,
and such doctrine applies not only to the plat of the original town
of Chicago but also to the plat of Fractional Section 15 addition,
and title of lot owners in such addition is, accordingly, limited to
the lot lines. (*City of Chicago v. Rumsey,* 87 Ill. 348, followed.)

6. MUNICIPAL CORPORATIONS—*city has power to charge for use
of sub-sidewalk space where it owns the fee of street.* A city has

power, where it owns the fee of a street, to charge an abutting owner a reasonable compensation for use of sub-sidewalk space adjoining his lot. (*Tacoma Safety Deposit Co.* v. *City of Chicago,* [*post,* p. 192,] and *Sears* v. *City of Chicago,* [*post,* p. 204,] followed.)

DUNN, J., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding.

WILSON, MOORE & McILVAINE, for appellant.

EDWARD J. BRUNDAGE, Corporation Counsel, and WILLIAM D. BARGE, for appellees.

Per CURIAM: The council of the city of Chicago passed an ordinance prohibiting the use of any space or the construction or maintenance of any structure under any street or other public ground in the city without a permit from the commissioner of public works and requiring compensation for the use of any such space. The appellant, being the owner of a building at the corner of Adams street and Wabash avenue and having occupied the space under the sidewalk adjoining his premises, filed his bill for an injunction restraining the city and its officers from forcibly compelling the observance of the ordinance. Upon a hearing the bill was dismissed, and the complainant appeals.

The appellant's premises are a part of Fractional Section 15 addition to Chicago, and he claims to be the owner of the fee to the center of Adams street and Wabash avenue where they adjoin his premises. The said fractional section 15 was granted by the United States to the State of Illinois to aid in the construction of the Illinois and Michigan canal. A subdivision thereof was made by the canal commissioners on June 13, 1836, pursuant to the authority of an act of the General Assembly approved January 9, 1836. (Laws of 1836, p. 145.) A plat showing Adams street and Wabash avenue was filed and recorded, and ap-

pellant's premises were, under the same authority, afterward sold and patented to the purchaser, through whom, by *mesne* conveyances, appellant derives title. Section 32 of the act in question authorized the commissioners to "examine the whole canal route and select such places thereon as may be eligible for town sites and cause the same to be laid off into town lots." Section 33 directed them to lay off and subdivide fractional section 15 into town lots, streets and alleys, as in their best judgment would best promote the interest of the canal fund, but the act contained no further provision regarding such subdivision. The effect, if any, of such subdivision upon the title was not declared but was left to be determined by existing rules.

The making of a plat did not, at common law, convey the fee of the streets. It could have effect as a conveyance only by virtue of a statute, and the statute under which the subdivision was made did not purport to give such effect to the subdivision, and did not, indeed, direct that any plat thereof should be made or recorded. The only statute then in force in regard to plats was that of February 27, 1833, (Laws of 1833, p. 599,) which provided that a plat made out, certified, acknowledged and recorded as required by the act should be deemed, in law and in equity, a sufficient conveyance to vest the fee simple of all lands marked on such plat as donated or granted to the public for the uses and purposes intended. We have held many times that a plat will not convey the fee of the streets unless made out, certified, acknowledged and recorded in strict conformity with the statute, but will operate as a common law dedication, creating an easement, only, in the streets. (*City of Belleville* v. *Stookey,* 23 Ill. 441; *Gosselin* v. *City of Chicago,* 103 id. 623; *Gould* v. *Howe,* 131 id. 490; *Village of Vermont* v. *Miller,* 161 id. 210; *Davenport Bridge Railway Co.* v. *Johnson,* 188 id. 472; *Birge* v. *City of Centralia,* 218 id. 503.) The difference between a statutory dedication and a common law dedication is, that the former

vests the legal title to the grounds set apart for public purposes in the municipal corporation, while the latter leaves the legal title in the original owner. (*Chicago, Rock Island and Pacific Railroad Co.* v. *City of Joliet,* 79 Ill. 25; *Gosselin* v. *City of Chicago, supra.*) The commissioners' plat was not made or certified by the county surveyor, as required by section 4 of the act of 1833, but was certified only by the assistant engineer of the commissioners, and if made by private owners would therefore have been of no effect as a conveyance of the streets. (*Village of Auburn* v. *Goodwin,* 128 Ill. 57; *Wilder* v. *Aurora, DeKalb and Rockford Electric Traction Co.* 216 id. 493.) The legal title would have remained in the proprietors unaffected by the plat, though subject to the public easement in the streets, and a conveyance of any lot included in the plat would have carried with it the fee in the soil to the center of the street on which such lot abutted. *Wilder* v. *Aurora, DeKalb and Rockford Electric Traction Co. supra; Davenport Bridge Railway Co.* v. *Johnson, supra; Owen* v. *Village of Brookport,* 208 Ill. 35; *Brewster* v. *Cahill,* 199 id. 309; *Thompson* v. *Maloney,* id. 276; *Thomsen* v. *McCormick,* 136 id. 135.

It is not contended by the appellees that the plat of fractional section 15 is in conformity with the act of 1833, so as to vest the fee of the streets in the city by the terms of that act. They contend that the effect of that act was to change the rule of construction as to conveyances made by the State so that the conveyance by the State of a lot bounded by a street carries title to the lot line only, and not to the center of the street, as had been the case before that act and is still the case in conveyances made by individuals, and this contention is sustained by the case of *City of Chicago* v. *Rumsey,* 87 Ill. 348. In that case the plaintiff sued to recover damages to his premises abutting on LaSalle street, caused by the construction of the tunnel under the Chicago river and the obstruction thereby of the

street in front of the premises. The case was determined under the constitution of 1848, and it became material to determine whether any part of the plaintiff's property was actually taken. The obstruction was entirely in the street, more than twenty feet from the lot line, and therefore, unless the plaintiff owned an interest in the street, no part of his property was taken and he had no cause of action. The deed under which he derived title described the premises as follows: "Beginning at a point on the east line of lot 1, in block 33, original town of Chicago, one hundred and forty feet from the north-east corner of said lot; running thence south along the line of said lot to the alley; thence west seventy-two feet; thence north forty feet, more or less, to a point and west of the point of beginning; thence east to the place of beginning." This description fixed by express terms the east line of the lot as the boundary of the plaintiff's premises, and the court held that it did so and conveyed no interest in the soil of the street. But the court went further. The premises were in the plat of the original town of Chicago, which was made by the commissioners, and the court entered upon a consideration of the effect of that plat and of the various statutes in regard to the disposition of the canal lands by the commissioners and of the acts of the commissioners under such statutes, and announced that the statute of 1833 showed that it was the policy of the State to so vest the fee of streets in cities, towns, etc., that it should be under the paramount control of the legislature for the public use, divested of all claims of private ownership, from which the conclusion was drawn that the conveyance by the State, after the adoption of that statute, of a lot bounded on a street could not be presumed to, and did not, carry title in the soil to the center of the street. These statements in the opinion were not *obiter dicta,* but were reasons given by the court for the conclusion reached and bore directly on that conclusion.

We do not assent to the reasoning of that opinion as to the effect of the plat or the public policy announced. The plat, as a mode of conveyance, was unknown to the common law. It was unknown to the law of Illinois prior to the statute of 1833. So far as streets or other public grounds were concerned, a plat was merely evidence of an intention to dedicate to the public. The act of January 4, 1825, contained nothing giving a plat the effect of a conveyance. The plat was not necessary to a dedication but was evidence of it. Dedication was the ordinary method by which the public right in streets was acquired. The act of 1833 did not restrict the power of an owner to dedicate land for a street or other public purpose or of a municipality to receive such dedication, nor did it change the effect of such dedication. It gave the plat the effect of a conveyance when made, certified, acknowledged and recorded according to law, but only when so made, certified, acknowledged and recorded. It simply enabled the municipality to take a fee simple title when the statute was complied with, but it expressed no policy applicable to other circumstances. If the legislature had intended to adopt a general policy requiring the vesting of the fee of the streets in the various municipalities of the State it would not have been left to vague inference, but it might very easily have been enacted that the same circumstances which would at common law constitute a dedication of land to public use should thereafter operate to transfer the fee in such land to the municipality. How can such a public policy be shown by this act as should reverse an established rule in the law of conveyancing when the courts of the State have always held that a very slight failure to conform to the statute will prevent the fee in the streets from vesting in the municipality, as, if the plat is acknowledged before an officer not named in the act, is not certified by the county surveyor, is signed by an attorney in fact, is not recorded, or if the dimensions of the streets are not shown? If such has been the fixed

policy of the State since 1833, why has the legislature, during all the years such policy has prevailed, failed to provide that in the exercise of the right of eminent domain a city may take the fee of land for its streets instead of a mere easement?  Or, if the public policy is so clearly declared as to require the abrogation of an established rule of conveyancing so far as the State is concerned, why should we not hold, on the same ground, that a municipality does take the fee in the land condemned for a street?  The *Rumsey case* has, however, been cited with approval in many subsequent decisions, and has been regarded as holding that plats made by the canal commissioners have the same effect as statutory plats under the statute of 1833.  That decision has become a rule of property which has been relied on for many years and which we should not now disregard. In the case of Fractional Section 15 addition to Chicago the situation is precisely the same as in the original town of Chicago.  This subdivision was also made by the canal commissioners, and although we do not think the doctrine of the *Rumsey case* should be extended beyond its precise facts, no distinction exists which furnishes a reason for refusing to apply it to the Fractional Section 15 addition as well as to the original town of Chicago.  We are therefore constrained to hold that the title of the appellant is limited to the lot lines and does not extend to the center of the streets adjoining his premises.

Appellant contends that the city has no power, even though it owns the fee of the streets, to authorize the use of the space beneath the streets and charge compensation for it.  This contention has received consideration at the present term and has been decided adversely to appellant in *Tacoma Safety Deposit Co.* v. *City of Chicago*, (*post*, p. 192,) and *Sears* v. *City of Chicago*, (*post*, p. 204.)

The decree of the circuit court will be affirmed.

*Decree affirmed.*

Mr. JUSTICE DUNN, dissenting.