*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1887**

Gregg H. Johnson, Plaintiff,

William Flies, et al.,
Appellants,

vs.

Township of Florence,
Respondent,

State of Minnesota, Defendant.

**Filed May 23, 2016
Affirmed and remanded
Rodenberg, Judge**

Goodhue County District Court
File No. 25-CV-14-1835

Patrick B. Steinhoff, Bruce D. Malkerson, Malkerson Gunn Martin LLP, Minneapolis, Minnesota (for appellants)

Einar E. Hanson, Benjamin J. Kirk, Strobel & Hanson, P.A., Hudson, Wisconsin; and John D. Hagen, Jr., Minneapolis, Minnesota (for respondent)

Considered and decided by Hooten, Presiding Judge; Larkin, Judge; and Rodenberg, Judge.

UNPUBLISHED OPINION

**RODENBERG**, Judge

Appellants William Flies, Linda Flies, and Chateau Frontenac, Ltd. challenge the district court's summary-judgment dismissal of this consolidated declaratory-judgment and title registration action. They argue that the district court erred in concluding that an 1857 plat conveyed fee title to a single un-subdivided parcel along the Lake Pepin shoreline to respondent Florence Township, that appellants' lots "fronting the shoreline dedication" do not extend to the shoreline of the lake, that the Marketable Title Act (MTA) does not extinguish the township's interest in the property, and that the township is therefore entitled to register the subject land in the Torrens system. We affirm the summary-judgment dismissal of appellants' claims and remand for Torrens proceedings consistent with this opinion.

## FACTS

This appeal concerns the ownership of shoreline property on Lake Pepin's Frontenac Point (subject land). Ownership and use of the subject land was previously disputed in 1935, and the history of the land and that earlier dispute are chronicled in *Schaller v. Town of Florence*, 193 Minn. 604, 259 N.W. 529 (1935). The *Schaller* court, borrowing from the magazine *Minnesota History*, described the land and the settlement of Frontenac Point:

> It is impossible to understand the charm of Frontenac unless one knows its history, for the little village is an expression of strong personalities. Few beauty spots in America have been so long in the possession of one or two families and remained untouched by commercialism. This little settlement is located

2

on Lake Pepin, a widening of the Mississippi River which forms the boundary between Minnesota and Wisconsin at this point. The scenery of the upper Mississippi Valley is unsurpassed in the West. High on either side of the river rise palisades of rock or wooded slopes that suggest the banks of the Rhine. Early explorers marveled at its beauty, and the tourist of today responds to its dignity and serenity. . . . To those who respond to the atmosphere of Frontenac it is a haven of rest and a place of beauty, the home of a grace and a culture with roots in the past and a flowering in our own age.

193 Minn. at 605-06, 259 N.W. at 530 (quotation omitted).

The 1935 dispute in *Schaller* was similar to the one before us now. The subject land was platted in 1857, and the original plat "dedicate[d] to public use [the subject land] to be used as a steamboat landing." *Id.* at 607, 259 N.W. at 532. The property was so used until 1917. *Id.* at 605, 610 N.W. at 530, 533. In 1907, Celestine Schaller purchased most of the land on Frontenac Point, including a hotel, but the legal descriptions of the lots she purchased did not include the subject land. *See generally id.* at 609, 259 N.W. at 532 (stating Schaller had purchased the hotel, which was located on land immediately behind Frontenac Point). Schaller maintained that the public's interest in the subject land had been abandoned. *Id.* at 609, 259 N.W. at 533. The township opposed her proceeding to vacate. *Id.* at 605, 259 N.W. at 530. The Minnesota Supreme Court held that the prior owners had, by the 1857 plat, dedicated the shoreline for general public use and that the discontinuation of the use of the property as a steamboat landing did not constitute abandonment of the township's interest. *Id.* at 611, 614-15, 259 N.W. at 533, 535.

Schaller later sold her lots. A Methodist camp group eventually bought the property formerly owned by her. After the camp closed, appellants purchased the property in 1987.

In October 2013, appellants filed an application to register title to their land and to the subject land, which is the unplatted shoreline adjoining their described lots. On January 28, 2014, the examiner of titles recommended denial of the application because appellants sought to register title to the shorefront land dedicated by the 1857 plat to public use.

In August 2014, appellants brought a declaratory-judgment action to determine ownership of the subject land. Appellants alleged that the township had not recorded its interest under the MTA, Minn. Stat. § 541.023 (2014), and had not exercised possession of the land for more than 40 years. In September 2014, the township filed an action to register title to the shoreline. The examiner of titles recommended that the township's application be granted.

On November 24, 2014, the district court consolidated the two registration-of-title actions and the declaratory-judgment action. Appellants dismissed their registration-of-title action without prejudice. Both parties moved for summary judgment in the remaining and consolidated declaratory-judgment and registration-of-title actions.

The district court granted the township's motion for summary judgment, dismissed appellants' declaratory-judgment complaint, and dismissed appellants' affirmative defenses in the township's registration-of-title action. The district court declined to

complete the Torrens proceedings, and instead certified the partial judgment for immediate appeal.

## D E C I S I O N

Appellants challenge the district court's grant of summary judgment, arguing that the district court erred in concluding that the 1857 plat conveyed fee title to a single un-subdivided parcel along the shoreline of Lake Pepin to the township, the MTA does not extinguish the township's interest in the subject land (which appellants contend is an easement), and the township is entitled to register the subject land in the Torrens system. The parties agree that if the 1857 plat conveyed fee title to the township, that issue is dispositive. *See Hempel v. Creek House Trust*, 743 N.W.2d 305, 312 (Minn. App. 2007) ("The MTA does not operate offensively to provide foundation for new title, but defensively to protect preexisting claims of title.").

We review a district court's grant of summary judgment de novo. *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010). "In doing so, we determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Id.* A genuine issue of material fact exists when there is sufficient evidence that could lead a rational trier of fact to find for the nonmoving party. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 70 (Minn. 1997). Summary judgment is not appropriate "when reasonable persons might draw different conclusions from the evidence presented." *Id.* at 69. Evidence is viewed in "the light most favorable to the party against whom summary judgment was granted." *STAR Centers, Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002).

5

Appellants argue that the district court erred in construing the Frontenac Plat as having conveyed fee title to the township. They maintain that the plat conveyed only an easement. Because *Schaller* considered the ownership of this same property, we first consider whether the opinion in that earlier appeal operates as either res judicata or collateral estoppel here.

Res judicata only applies when four elements are present: (1) the same set of factual circumstances was involved in both the earlier and the current proceedings; (2) both proceedings involved the same parties or parties in privity with them; (3) the earlier case included a final judgment on the merits; and (4) the party against whom the doctrine applies had a full and fair opportunity to litigate the claim. *Brown-Wilbert, Inc. v. Copeland Buhl & Co.*, 732 N.W.2d 209, 220 (Minn. 2007). Collateral estoppel, or issue preclusion, is narrower than res judicata. The requirements for application of collateral estoppel are that (1) the issue in the case is identical to an earlier adjudication, (2) the earlier case was a "final judgment on the merits," (3) the party to be estopped was a party or in privity with a party in the earlier case, and (4) the party sought to be estopped had a "full and fair opportunity to be heard" in the earlier case. *Hauschildt v. Beckingham*, 686 N.W.2d 829, 837 (Minn. 2004). Collateral estoppel only applies to issues "actually litigated, determined by, and essential to a previous judgment." *In re Application of Hofstad*, 376 N.W.2d 698, 700 (Minn. App. 1985) (quotation omitted). Neither doctrine is to be rigidly applied. *Hauschildt*, 686 N.W.2d at 837.

Here, neither doctrine applies as a bar. Res judicata does not apply because the issue in the earlier appeal was whether to vacate an interest arising from the plat due to

6

abandonment. Here, appellants argue that the plat conveyed only an easement and that the township, as owner of the easement, failed to exercise possession and failed to record its interest under the MTA for 40 years. These claims require proof of different facts than were considered in *Schaller*. Appellants' MTA claim is based on a new statutory provision not in effect at the time of *Schaller*. *See* Minn. Stat. § 541.023.

Collateral estoppel does not apply to the fee-versus-easement dispute because that issue was not "directly determined" in *Schaller*. The *Schaller* court instead resolved the case by applying common-law abandonment principles. 193 Minn. at 614-15, 259 N.W. at 534-35. The supreme court held that Schaller did not meet the statutory standard for vacating a plat, which required that the vacation be in the public interest. *See id.* The fee-versus-easement issue was not squarely decided in *Schaller*, nor was it necessary to the holding there.

Although *Schaller* does not bar appellants' claims or finally resolve the fee-versus-easement issue, we agree with the district court that the *Schaller* court's language in the earlier case informs our decision. The *Schaller* court noted:

> It seems obvious to us that what the donors intended was to convey to the public for its use all of Lake avenue, including as well all the property fronting upon the lake at Frontenac Point. . . . Everything points to a general donation or grant to public use of all the areas not surveyed into lots and blocks. . . . It is unreasonable to suppose that the dedication in respect of steamboat landing made for naught the prior general grant in respect of the public use indicated by the plat. . . . Conceding that the [district] court was right in holding that the lake shore had not been used for steamboat landing purposes over a period of some seventeen years, yet that would not, as we view the situation, at all interfere with the right of the public to the possession for use of Lake

7

avenue and the other streets and public places bordering upon the lake. The steamboat landing provision cannot be said to be in denial of the general grant.

193 Minn. at 611, 259 N.W. at 533.

Informed by *Schaller*'s characterization of the Frontenac Plat, we consider now whether the 1857 plat conveyed fee title or an easement to the subject land.

The original plat concerned and conveyed to the public far more shoreland than just the steamboat landing. The plat conveyed the subject land in the following terms:

> We also dedicate to Public use the Lake Shore between Blocks 9 & 13 to be used as a Steamboat Landing, reserving to ourselves all rights of wharfage and all rights and privileges of Ferry either within the above limits or elsewhere, either at the ends of the streets or within the boundaries of Lots which run to the water.

The territorial statute in effect at the time of platting, which the *Schaller* court applied to the facts before it, provided:

> When the plot or map shall have been made out and certified, acknowledged and recorded as required by this chapter, every donation or grant to the public or any individual or individuals, religious society or societies, or to any corporation or body politic, marked or noted as such on said plot or map, shall be deemed in law and equity a sufficient conveyance to vest the fee simple of all such parcel or parcels of land, as are therein expressed, and shall be considered to all intents and purposes a general warranty against such donor or donors, their heirs or representatives to said donee or donees, grantee or grantees, for his, her or their use, for the uses and purposes therein named, expressed and intended, and no other use and purpose whatever; and the land intended to be for the streets, alleys, ways, commons or other public uses in any town or city, or addition thereto, shall be held in the corporate name thereof, in trust to, and for the use and purposes set forth and expressed or intended.

8

Minn. Gen. Stat. ch. 26, § 5 (1858); *see also Schaller*, 193 Minn. at 608, 259 N.W. at 632 (noting that the statute was effective between 1849 and 1858). The first part of the statute provides that grants to the public are deemed to convey a fee simple interest. Minn. Gen. Stat. ch. 26, § 5. The second excepts from this treatment lands intended for streets and public ways, and treats such "donations" as easements. *Id.* The parties dispute which portion of the statute governs the platters' conveyance of the subject land. We review the district court's construction of the territorial statute de novo. *Denman v. Gans*, 607 N.W.2d 788, 794 (Minn. App. 2000) *review denied* (Minn. Jun. 27, 2000).

Appellants rely on a line of cases that distinguish "donation[s] or grant[s]," which convey fee title, from dedications, which do not convey fee title. *See Betcher v. Chicago M. & St. P. Ry. Co.*, 110 Minn. 228, 124 N.W. 1096 (1910); *Schurmeier v. St. Paul & Pac. R.R. Co.*, 10 Minn. 82 (1865).

Citing *Schurmeier*, appellants argue that the plain language of the Frontenac Plat indicates that it was intended to dedicate, rather than donate or grant, the subject land to the public strictly for a steamboat landing. *See Schurmeier*, 10 Minn. at 104 ("A dedication is not a grant or donation. Its effect is not to deprive a party of title to his land, but to estop him, while the dedication continues in force . . . ."). In *Schurmeier*, the parties disputed the possession and use of a levee along the Mississippi River in St. Paul. *Id.* at 86-87. The plat in *Schurmeier* extended to the main channel of the river, *id.* at 84, and designated a strip of land adjoining the river as a "landing," *id.* at 85-86. The plat also showed an "open river without islands." *Id.* at 84. But changing water levels actually revealed an "island" in the river. *Id.* The city graded the levee and included the

9

island by filling the area in between it and the mainland, which effectively enlarged the lots fronting on the landing. *Id.* at 86, 101-03. The plaintiff, Casper Schurmeier, owned lots fronting on the landing and had built a warehouse on them. *Id.* at 83, 86. Schurmeier derived title to his property from Louis Roberts, who purchased the property from the government. *Id.* 85. He sought to enjoin the defendant railroad company from constructing railroad tracks on the newly graded land, which would obstruct his use of his warehouse in connection with the river. *Id.* at 87.

The railroad company argued, in part, that Schurmeier did not have fee title to the land because the plat dedicated it as a "landing." *Id.* at 105. The Minnesota Supreme Court rejected the railroad company's argument, holding that,

> *The use for which the dedication was made*, therefore, *determines the extent of the right parted with by the owner and acquired by the public or corporate authorities of the town*. Neither the use for which the dedication was made, nor the language of the statute justifies, in this case, the conclusion that a legislative transfer of the fee was intended, and without such transfer, it remains in [the private party] and his grantees.

*Id.* at 104-05 (emphasis added). *Schurmeier*'s conclusion was therefore fact-specific, turning on the fact that the initial dedication allowed the public to use the parcel for a "landing." *Id.* at 104.

Here, the conveyance in the Frontenac Plat is unlike the dedication in *Schurmeier*. This plat provides for a general conveyance for "public use." The *Schaller* court thought it "obvious . . . that what the donors intended was to convey to the public for its use" the Lake Pepin shoreline on Frontenac Point. 193 Minn. at 611, 259 N.W. at 533. Both

10

before and after 1917, when steamboat use of the point ceased, the shoreland conveyed to the public consisted of much more shoreline than was used for the landing, and included public uses other than the steamboat landing.

Appellants also cite *Betcher* for the proposition that "the dedication of land [for a steamboat landing or levee] . . . does not pass the fee-simple title thereto, but only such an estate as the purpose of the trust requires, and that the fee, subject to the public easement, remains in the dedicator and his grantees."  110 Minn. at 234, 124 N.W. at 1099.  The facts in *Betcher* are similar to those of *Schurmeier*:  a railroad company sought to build railroad tracks on a piece of land that was, at one time, dedicated to public use as a "Steamboat Landing," and a private individual claimed that he owned fee title to the disputed property.  *Id.* at 230-31, 124 N.W. at 1097.  The plaintiff, Charles Betcher, sought to recover a tract of land that the defendant railroad company possessed after the town of Red Wing declared the tract vacated and permitted the railroad company to use it.  *Id.* at 229-30, 124 N.W. at 1092.  The railroad company argued that the plat, which labeled the tract of land "Steamboat Landing," conveyed fee title to the town and that the company "was in the possession of the premises for railroad purposes with the acquiescence of the owner [town]."  *Id.* at 230, 124 N.W. at 1097.  The plat in *Betcher* did not contain any other dedication, grant, or donation language concerning the disputed property.  *Id.* at 233-34, 124 N.W. at 1098-99.

The Minnesota Supreme Court reviewed the facts in *Betcher* and was "of the opinion that the [land] was dedicated to the use of the public primarily as a steamboat landing or levee."  *Id.* at 231, 124 N.W. at 1097.  But there is nothing from the *Betcher*

11

opinion that indicates that the plat contained any language concerning the dedication other than a label, "Steamboat Landing." Here, in addition to the label, the Frontenac Plat contains language that the subject land is "dedicate[d] to Public use." *Schaller*, 193 Minn. at 607, 259 N.W. at 532. The Minnesota Supreme Court has construed this very provision in the earlier litigation as "a general donation or grant to public use." *Id.* at 611, 259 N.W. at 533. *Betcher* is therefore factually distinguishable from this case.[1]

Neither the plain language of the territorial statute, nor caselaw interpreting that statute provides a general rule concerning conveyances for the purpose of establishing steamboat landings. But *Schurmeier*'s general principle provides guidance for determining whether the first half or the second half of the platting statute governs the Frontenac Plat. The *Schurmeier* holding indicates that the platters' intent "determines the extent of the right parted with by the owner." 10 Minn. at 104. We are informed by *Schaller*'s construction of the Frontenac Plat as "intend[ing] to convey to the public for its use all of Lake avenue, including as well all the property fronting upon the lake at Frontenac Point." 193 Minn. at 611, 259 N.W. at 533. The *Schaller* court observed that "[e]verything points to a general donation or grant to public use of all the areas not surveyed into lots and blocks," which includes the subject land. *Id.* The clear intent of the 1857 plat was to convey a fee interest. The supreme court said that "[i]t is

---

[1] We are mindful that, at common law, a "dedication" generally "vests only an easement in the public." Note, *Public Ownership of Land Through Dedication*, 75 Harv. L. Rev. 1406, 1408 (1962) (citing *Ryerson v. City of Chicago*, 247 Ill. 185, 93 N.E. 162 (1910)). Here, we are applying the territorial statute, and not the common law, and we do so in the context of the Minnesota Supreme Court's earlier review of a case concerning this precise parcel of land under that same statute.

unreasonable to suppose that the dedication in respect of [a] steamboat landing made for naught the prior general grant in respect of the public use indicated by the plat." *Id.* The *Schaller* court further observed that even if "the lake shore had not been used for steamboat landing purposes over a period of some seventeen years, . . . that would not . . . at all interfere with the right of the public to the possession for use of Lake avenue and the other streets and public places bordering upon the lake." *Id.* In concluding that the public had not abandoned the subject land, the supreme court necessarily construed the Frontenac Plat as having conveyed more than an easement limited to steamboat-landing purposes. Although the earlier *Schaller* opinion did not determine the same issues we consider here, the supreme court's construction of the plat language concerning this very same parcel of land is persuasive. The 1857 plat conveyed fee title to the subject land to respondent township.

Moreover, the 1857 plat contains the following language concerning the land:

> We also dedicate to public use the Lake Shore between Blocks 9 & 13 to be used as a Steamboat Landing, *reserving to ourselves all rights of wharfage and all rights and privileges of Ferry either within the above limits or elsewhere, either at the ends of the streets or within the boundaries of Lots which run to the water.*

*Id.*, at 606, 259 N.W. at 532 (emphasis added.) Two portions of this reservation by the plat confirm that it conveyed fee title. First, the plat reserved rights in the grantor. Had the grant been limited to an easement, the reservation would have been unnecessary because, in the case of an easement, the grantor would retain all rights in the property except those rights conveyed in the easement. *See* 28A C.J.S. *Easements* § 192 (2016)

13

("Owners of the servient tenement retain every incident of ownership not inconsistent with the easement and the enjoyment of the same."). Second, the passage makes specific reference to lots that "run to the water." At the point where the Steamboat Landing was situated, the lots do not "run to the water," while in other places the lots are designated by the plat to run up to the shore of Lake Pepin.

Because, under the territorial statute, the township was granted a fee interest in the shoreland, appellants cannot rely on the MTA to *create* a fee interest where the deeds to which their title can be traced do not include that shoreline property. *See Hempel*, 743 N.W.2d at 312 ("The MTA does not operate offensively to provide foundation for new title, but defensively to protect preexisting claims of title."); *see also Padrnos v. City of Nisswa*, 409 N.W.2d 36, 38 (Minn. App. 1987) (noting that "the MTA was designed to be invoked as a defense" and "does not operate to provide a foundation for a new title"), *review denied* (Minn. Sept. 23, 1987). The MTA has no application here.

Under the territorial statute in effect at the time, the 1857 plat conveyed fee title to the subject land to the township. Therefore, we do not address appellants' other arguments, and we affirm the district court's grant of summary judgment in favor of respondent. Because the Torrens proceedings were held in abeyance pending this appeal, we remand the case for Torrens proceedings consistent with this opinion.

**Affirmed and remanded.**